Mary TURNER, a/k/a Mary Turner
Hind, A Feme Sole,
Plaintiff–Appellant,

v.

UPTON COUNTY, TEXAS,
Defendant–Appellee.

No. 89–8034.

United States Court of Appeals,
Fifth Circuit.

Sept. 11, 1990.

John E. Gunter, Law Office of John E. Gunter, Midland, Tex., for plaintiff-appellant.

James P. Allison, Stan Reid, Allison & Associates, Austin, Tex., for defendant-appellee.

Before RUBIN, POLITZ, and BARKSDALE, Circuit Judges.

POLITZ, Circuit Judge:

Contending that Upton County, Texas should be held liable under 42 U.S.C. § 1983 for the alleged conspiracy of the county sheriff and district attorney to subject her to a "sham" trial, Mary Turner appeals the district court's grant of summary judgment in favor of the county. Concluding that the alleged actions, if proven, properly would be regarded as actions of the county, we reverse and remand for further proceedings consistent herewith.

*Background*

Turner's lawsuit is based upon events surrounding her March 1987 trial in Texas state court on felony drug charges. Turner alleges that in August 1985 then-Upton County Sheriff Glenn Willeford paid Larry Woolf, an informant, to plant methamphet-

amine on her business premises and then, acting under color of law, the sheriff seized the drugs pursuant to a search warrant, leading to her indictment for possession of a controlled substance.[1] Turner further alleges that Sheriff Willeford then conspired with J.W. Johnson, Jr., District Attorney for the 112th Judicial District, which includes Upton County, to force her to stand trial on what they knew to be a trumped-up charge, to secure perjured testimony by one Larry Dale Jackson in an attempt to discredit one of her witnesses, and to convince her to plead guilty to an offense of which they knew she was innocent.

On December 8, 1988 Turner filed suit against the county, Woolf, and the sheriff, in both his official and individual capacities. On March 16, 1989 Turner added District Attorney Johnson as a defendant in both his official and individual capacities.

In July 1989 the district court ruled that the Texas two-year statute of limitations applied to Turner's allegations, citing *Owens v. Okure*, 488 U.S. 235, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989). Under this earlier ruling, which is now the law of the case, both the county and the sheriff may be held liable for their actions from December 8, 1986 to the present, and both the county and the district attorney may be held liable for their actions from March 16, 1987 to the present. The events surrounding the alleged "planting" of the methamphetamine, Turner's arrest, and her indictment, are no longer available as a cause of action.

Following the district attorney's successful motion for a more definite statement, Turner filed a third amended complaint. The district court granted summary judgment absolving the county of all liability and Johnson of liability in his official capacity. With regard to the county, the district court found that Turner had failed to plead specific facts sufficient to show that her alleged injuries had been caused by an official county policy or custom. The court concluded that to subject the county to liability for the acts of the sheriff and

district attorney would amount to *respondeat superior*, an outcome precluded by *Monell v. New York City Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The court further held that the district attorney was entitled to absolute immunity from section 1983 liability for actions taken within the scope of his prosecutorial role, *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), but that Turner's allegations of a conspiracy between him and the sheriff stated a claim upon which Turner could recover against the district attorney in his individual capacity. Despite the continued viability in whole or in part of her claims against the individual defendants, Turner expressed her desire to appeal the dismissal of Upton County, stipulating that she would dismiss the remaining claims if the district court's ruling were affirmed. The court certified its judgment pursuant to Fed.R.Civ.P. 54(b) and Turner timely appealed.

### Analysis

■ Remaining in the wake of the district court's prior limitation ruling and its current ruling on appeal is Turner's claim that the sheriff, in his official and individual capacities, and the district attorney, in his individual capacity, conspired to subject her to trial on false charges bolstered by fabricated evidence and perjured testimony and, despite their knowledge of the true circumstances and of her innocence, attempted to coerce her to change her plea from not guilty to guilty. The county's liability, if any, must be based upon this claim.

In granting summary judgment for the county the district court apparently assumed that the sheriff's authority was granted by the county's governing body, which the court concluded had given him "discretionary authority in certain circumstances." The court's analysis of county liability was premised upon the following language from the Supreme Court's opinion in *City of St. Louis v. Praprotnik*:

---

**1.** Turner alleges that Sheriff Willeford's actions were motivated by revenge or a desire to "keep her quiet" because she was aware of improprieties allegedly committed by him.

[T]he authority to make municipal policy is necessarily the authority to make *final* policy.... When an official's discretionary decisions are constrained by policies not of that official's making, those policies, rather than the subordinate's departures from them, are the act of the municipality. Similarly, when a subordinate's decision is subject to review by the municipality's authorized policymakers, they have retained the authority to measure the official's conduct for conformance with *their* policies. If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final.

485 U.S. 112, 127, 108 S.Ct. 915, 925, 99 L.Ed.2d 107 (1988) (citations omitted, emphasis in original). In premising the county's liability on whether its governing body had ratified the alleged actions of these officials, *i.e.*, whether they had acted pursuant to an official county policy or custom, the district court inadvertently overlooked the possibility that the sheriff and district attorney were *themselves* the final policymakers with respect to the matters under their jurisdiction whose actions, to the citizens of Upton County, were the actions of the county itself.

■ Two configurations can lead to a municipality's liability under section 1983 for the acts of its officials. In the first, typified by the district court's reference to *Praprotnik*, a municipality's final policymakers are held effectively to have made policy or condoned creation of a custom by ratifying the unconstitutional or illegal actions of subordinate officers or employees. In the second, the municipality may be held liable for the illegal or unconstitutional actions of its final policymakers themselves as they engage in the setting of goals and the determination of how those goals will be achieved. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). We find the latter, not the former, to be applicable in the instant case.

It has long been recognized that, in Texas, the county sheriff is the county's final policymaker in the area of law enforcement, not by virtue of delegation by the county's governing body but, rather, by virtue of the office to which the sheriff has been elected:

Because of the unique structure of county government in Texas ... elected county officials, such as the sheriff ... hold[ ] virtually absolute sway over the particular tasks or areas of responsibility entrusted to him by state statute and is accountable to no one other than the voters for his conduct therein.... Thus, at least in those areas in which he, alone, is the final authority or ultimate repository of county power, his official conduct and decisions must necessarily be considered those of one "whose edicts or acts may fairly be said to represent official policy" for which the county may be held responsible under section 1983.

*Familias Unidas v. Briscoe*, 619 F.2d 391, 404 (5th Cir.1980) (quoting *Monell*, 436 U.S. at 694, 98 S.Ct. at 2037, citations omitted); *see Bennett v. City of Slidell*, 728 F.2d 762, 796 (5th Cir.1984) (en banc), *cert. denied*, 472 U.S. 1016, 105 S.Ct. 3476, 87 L.Ed.2d 612 (1985). Among other responsibilities he is charged with preserving the peace in his jurisdiction and arresting all offenders. Tex.Code Crim.P. arts. 2.13, 2.17. As the county's final policymaker in this area, he has been empowered by the state to "define objectives and choose the means of achieving them" without county supervision. *Rhode v. Denson*, 776 F.2d 107, 109 (5th Cir.1985), *cert. denied*, 476 U.S. 1170, 106 S.Ct. 2891, 90 L.Ed.2d 978 (1986). These means include the investigation of crimes, the collection of evidence thereof, and the presentation of this evidence to the district attorney for purposes of determining the appropriateness of prosecution. In essence, Turner alleges that in her case the sheriff, in conspiracy with the district attorney, set an impermissible goal of subjecting her to trial on false charges and used the powers inherent in his position as chief county law enforcement officer to create the case presented at trial,

secure perjured testimony, and attempt to coerce her to plead guilty.

■ If proven, therefore, the sheriff's participation as a coconspirator, constituting as it would an abuse of his authority as the ultimate repository of law enforcement power in Upton County, would render the county liable as well.[2] Holding the county liable for the actions of its sheriff under these circumstances does not run afoul of *Monell*'s admonition against *respondeat superior* liability on the part of the county for the actions of its employees. The sheriff is an elected county official equal in authority to the county commissioners within that jurisdiction; his actions are as much the actions of the county as the actions of those commissioners.[3] As the Supreme Court stated in *Pembaur*:

> To hold a municipality liable for actions ordered by such officers exercising their policymaking authority is no more an application of the theory of *respondeat superior* than was holding the municipalities liable for the decisions of the City Councils in *Owen*[4] and *Newport*.[5] In each case municipal liability attached to a single decision to take unlawful action made by municipal policymakers.

*Pembaur*, 475 U.S. at 483, 106 S.Ct. at 1300.

■ Just as the alleged actions of the sheriff were, under the circumstances, the actions of the county for section 1983 purposes, so too the alleged actions of the elected district attorney may have been, even though he covered more than this county. The sheriff's and the district attorney's alleged participation in the conspiracy, if proven, will suffice to impose liability on the county.

The contention that a conspiracy existed which deprived the petitioner of rights guaranteed by federal law makes each member of the conspiracy potentially liable for the effects of that deprivation. Liability arises from membership in the conspiracy and from traditional notions that a conspirator is vicariously liable for the acts of his co-conspirators. Liability does not arise solely because of the individual's own conduct. Some personal conduct may serve as evidence of membership in the conspiracy, but the individual's actions do not always serve as the exclusive basis for liability.[6]

*Slavin v. Curry*, 574 F.2d 1256, 1263 (5th Cir.1978), *overruled on other grounds*, *Sparks v. Duval County Ranch Co.*, 604 F.2d 976 (5th Cir.) (en banc), *aff'd*, 449 U.S. 24, 101 S.Ct. 183, 66 L.Ed.2d 185 (1979). In stating that the county could be held liable

2. Cognizant of potential eleventh amendment complications, we have repeatedly confronted the issue of whether a county official in particular circumstance was acting as an official of the state or of the county. *See Familias Unidas*, 619 F.2d at 404 (county judge implementing unconstitutional state law acted as a state official); *Crane v. Texas*, 759 F.2d 412 (5th Cir.), *amended on reh'g*, 766 F.2d 193 (5th Cir.), *cert. denied*, 474 U.S. 1020, 106 S.Ct. 570, 88 L.Ed.2d 555 (1985) (district attorney enforcing unconstitutional county policy acted as a county official); *Echols v. Parker*, 909 F.2d 795 (5th Cir.1990) (when official, state or local, is directed in his actions by state statute, he acts as a state official).

Turner's allegations are somewhat different in that her complaint does not concern the way in which the sheriff enforced a state or county law or policy established by another branch of one of those entities; rather, she alleges that he abused the powers inherent in his role as chief policymaker for how the peace would be kept in Upton County.

3. The county contends that it cannot be subject to liability because it did not authorize the sheriff to violate the law. This argument is without merit. Where a *final* policymaker abuses the powers vested in his position to the detriment of a citizen, that abuse can be the basis for suit being brought under section 1983, assuming the other bases for satisfying the requirements of that section are properly alleged.

4. *Owen v. City of Independence*, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980) (city council passed resolution firing plaintiff without a pretermination hearing).

5. *Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981) (city council canceled concert license after dispute over content of performance).

6. As a consequence, all parties to an alleged section 1983 conspiracy need not be state actors or charged in the same capacities for liability to attach to all—even if one of the coconspirators is absolutely immune from liability for his own actions as a participant. *See Richardson v. Fleming*, 651 F.2d 366 (5th Cir.1981).

not only for the sheriff's participation in the conspiracy, but could be held directly or vicariously liable as well for the actions of his alleged coconspirator, we carefully distinguish this premise for vicarious liability from that prohibited by *Monell*, in which "the sole nexus between the employer and the tort is the fact of the employer-employee relationship." *Monell*, 436 U.S. at 693, 98 S.Ct. at 2037.

■ When the official representing the ultimate repository of law enforcement power in the county makes a deliberate decision to abuse that power to the detriment of its citizens, county liability under section 1983 must attach, provided that the other prerequisites for finding liability under that section are satisfied. The district court erred in absolving the county of section 1983 liability.[7]

The judgment of the district court is REVERSED and the matter is REMANDED for further proceedings consistent herewith.

---

7. Turner also complains that the district court erred in concluding that she had failed in her third amended complaint to allege viable state claims against the parties over which it could assert its pendent jurisdiction and urges that the court should have exercised its power to hear her state claims. Turner's state law allegations against the county are based solely upon "*respondeat superior*," which is not, in and of itself, a cause of action. Moreover, Turner does not assert that the district court abused its discretion in refusing to exercise pendent jurisdiction, only that it should have done so. We will not disturb the court's ruling. *See Evans v. City of Dallas*, 861 F.2d 846 (5th Cir.1988).