**Anita PAXTON, Plaintiff,**

v.

**R.D. BEARDEN, President, Henry Reed, Jr., Vice–President, Willie F. Brown, Jerry Wood, and Arvell Bullock, Members of the Board of Supervisors of Humphreys County, Mississippi, Individually and in their Official Capacities, Defendants.**

**No. GC89–327–S–O.**

United States District Court,
N.D. Mississippi,
Greenville Division.

Feb. 18, 1992.

Shirley Payne, Horn & Payne, Jackson, Miss., for plaintiff.

Tyree Irving, Greenwood, Miss., for defendants.

## OPINION

SENTER, Chief Judge.

A nonjury trial was held in this case on September 26, 1991. Pursuant to Fed. R.Civ.P. 52, the court is now prepared to issue its findings of fact and conclusions of law.

## FINDINGS OF FACT

On August 5, 1987, the plaintiff, Anita Paxton, began work as the Deputy Circuit Clerk of Humphreys County, Mississippi. The circuit clerk, and Paxton's immediate supervisor, was the late James Robert Doyle. Although it was Doyle who made the decision to hire Paxton and the Board was not consulted beforehand, the official minutes from the Humphreys County Board of Supervisors meeting held on November 2, 1987, reflect: "Anita Paxton was hired as Deputy Circuit Clerk in the Circuit Clerk's Office at a salary of $850.00 per month beginning November 1, 1987." Paxton's W–2 forms for 1987 and 1988 identify her employer as the Humphreys County Board of Supervisors.

In her capacity as deputy circuit clerk, Paxton's duties included registering voters, setting the court calendars, managing the civil and criminal dockets, and recording marriage licenses. Doyle oversaw all of her work; no member of the Board of Supervisors ever gave her any instructions on how to do her job.

On August 12, 1988, Paxton, who was pregnant and was having attendant medical complications, took leave upon the advice of her doctor. Approximately two weeks later, she delivered a son. Before her son was born, Paxton discovered that Doyle was attempting to terminate her insurance. She called defendants Bearden and Wood with this information.

On September 30, 1988, Doyle terminated Paxton. The termination notice stated:

> TO WHOM IT MAY CONCERN: Re: Anita [P]axton
> This is to advise that the above mentioned was employed by me as Deputy Clerk with the understanding that pregnancy would not occur during her employment. She gave birth to a child on 25 August 1988—the reason she was terminated.

It was typed and signed by Robert Doyle in Paxton's presence.

After she received this notice, Paxton called defendant Wood and read the letter to him over the phone. Two days later, her mother-in-law, Grace Paxton, phoned Reed with the same information. Paxton never contacted the Board in writing or appeared before it during session with this information. According to defendants Bearden and Wood, Doyle did not consult the Board before taking action against Paxton.

A certified copy of the Board's claim docket dated September 6, 1988, reveals that the entry for Paxton's August salary was voided by defendant Bearden.

Paxton recounted the grief, stress, and anxiety she experienced from being unable to pay her bills after her discharge. As a result, her credit rating plummeted, making it difficult to obtain any kind of credit, and her reputation in the community was damaged. Paxton also described the difficulty of finding new employment because of the stigma attached to being fired. Paxton was able, after five months, to find temporary employment before finally getting the full-time job she now holds at a finance company.

Grace Paxton, plaintiff's mother-in-law, described the adverse effect of the termination on her daughter-in-law's self-esteem and her credit reputation.

### CONCLUSIONS OF LAW

#### I.

In this case Paxton seeks relief under Title VII and 42 U.S.C. § 1983. Specifically, she alleges violations of the Pregnancy Discrimination Act and the Fourteenth Amendment. She may pursue both of these causes of action only if the "predicate for [her] § 1983 claim [is] a right independent of the right Title VII creates...." *Johnston v. Harris County Flood Control District*, 869 F.2d 1565, 1573 (5th Cir.1989), *cert. denied*, 493 U.S. 1019, 110 S.Ct. 718, 107 L.Ed.2d 738 (1990). In other words,

> Although Title VII supplements and overlaps § 1983, it remains an exclusive remedy when a state or local employer violates only Title VII. When, however, unlawful employment practices encroach, not only on rights created by Title VII, but also on rights that are independent of Title VII, Title VII ceases to be exclusive. At this point, § 1983 and Title VII overlap, providing supplemental remedies.

*Johnston*, 869 F.2d at 1576.

■ While Title VII statutorily prohibits the discharge of any person because of her sex, 42 U.S.C. § 2000e–2(a)(1), and specifically "because of or on the basis of pregnancy, childbirth, or related medical conditions," 42 U.S.C. § 2000e(k), the Fourteenth Amendment of the United States Constitution protects a woman's right to conceive and bear children. *See Hodgson v. Minnesota*, 497 U.S. ——, 110 S.Ct. 2926, 111 L.Ed.2d 344 (1990) (childbearing decision is "component of [a woman's] liberty that is protected by the Due Process Clause") (citing, *inter alia, Carey v. Population Services International*, 431 U.S. 678, 97 S.Ct. 2010, 52 L.Ed.2d 675 (1977); *Cleveland Board of Education v. La Fleur*, 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974); *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973);

*Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965)); *Avery v. Homewood City Board of Education*, 674 F.2d 337 (5th Cir.1982), *cert. denied*, 461 U.S. 943, 103 S.Ct. 2119, 77 L.Ed.2d 1300 (1983) (discharge of teacher who was unwed and pregnant violated Equal Protection Clause). Because Paxton has based her § 1983 claim on a violation of an additional right that is independent of those falling under Title VII, she may simultaneously pursue actions under both statutes.

The court further finds that Paxton has established obvious violations of both Title VII and the Fourteenth Amendment. As evidenced by the termination notice, Doyle plainly predicated his discharge of Paxton on an impermissible basis, i.e., "because of or on the basis of pregnancy, childbirth, or related medical conditions." It is clear, and defendants seemed to concede at trial, that this violated Title VII.

■ Moreover, Paxton proved at trial (and Doyle's notice leaves no doubt) that *the* motivating reason for her termination was the fact that she gave birth, conduct which is constitutionally protected. At trial, defendants offered no legitimate reason for Paxton's discharge, nor did they argue that Doyle would have terminated Paxton even in the absence of the protected activity. Under these circumstances, Paxton established her right to recover under § 1983 as well.

#### II.

That liability exists in this case does not end the inquiry, however, for one of the overriding questions presented is whether these defendants were Paxton's employer and are liable for the actions of Doyle, an elected county official. In support of her position that the instant defendants are in fact liable, Paxton relies on a Mississippi state statute which provides, *inter alia*, that "[d]eputy circuit clerks ... shall be deemed employees of the county." Miss. Code Ann. § 9-7-126. This statute is indeed pertinent in this case, especially in deciding whether § 1983 liability attaches to these defendants; however, in determin-

ing their Title VII liability, the court must look principally not to state law but to federal law. *Calderon v. Martin County,* 639 F.2d 271, 273 (5th Cir.1981). "State law is relevant [only] insofar as it describes the plaintiff's position, including [her] duties and the way [she] is hired, supervised and fired." *Calderon,* 639 F.2d at 273. To that end, the court now examines the statute and relevant case law addressing this issue.

### A.

Title VII defines an employer as "a person engaged in an industry affecting commerce who has fifteen or more employees ... and any agent of such a person...." 42 U.S.C. § 2000e(b). Included in this definition are "governments, governmental agencies, [and] political subdivisions." 42 U.S.C. § 2000e(a). The term "employee" is subsequently defined as "an individual employed by an employer...." 42 U.S.C. § 2000e(f). This definition contains an important exception:

> the term "employee" shall not include any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff, or an appointee on the policy making level or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office. The exemption ... shall not include employees subject to the civil service laws of a State government, governmental agency or political subdivision.

*Id.*

Defendants admit that technically Humphreys County falls within the literal definition of "employer," presumably because it is a state political subdivision that employs over fifteen people. However, in defendants' view, "common sense dictates that the complaining party must be an employee of Humphreys County," which Paxton was not. The court, in agreeing with this conclusion, is able to rely on more than common sense.

In this case, no evidence was presented that any civil service laws apply; thus, under the exception to the definition of "employee," it is clear that Circuit Clerk Doyle, who was indisputably elected by the people of Humphreys County, *see* Miss. Const. art. VI, § 168, was not an employee of the County under Title VII, and, in turn then, the County was not Doyle's employer. Further, under this analysis, the County would not be the employer of anyone who was on Doyle's personal staff or was appointed on the policy making level or was an immediate adviser to him, since such a person would likewise not be considered a Title VII statutory employee. The court must now determine if Paxton fits within one of these categories.

In determining whether a plaintiff falls within the "personal staff" exception to Title VII's definition of employee, the court looks to

> (1) whether the elected official has plenary powers of appointment and removal, (2) whether the person in the position at issue is personally accountable to only that elected official, (3) whether the person in the position at issue represents the elected official in the eyes of the public, (4) whether the elected official exercises a considerable amount of control over the position, (5) the level of the position within the organization's chain of command, and (6) the actual intimacy of the working relationship between the elected official and the person filling the position.

*Teneyuca v. Bexar County,* 767 F.2d 148, 151 (5th Cir.1985). This list is not exhaustive, *Teneyuca,* 767 F.2d at 151–52, but "[i]n short, the courts look to the 'nature and circumstances of the employment relationship between the complaining individual and the elected official to determine if the exception applies.'" *Id.* at 152 (citation omitted). Finally, this inquiry is of a "highly factual nature," *id.,* and the exception is to be construed narrowly. *Id.*

Certainly, Paxton's position was created by state law and the county was statutorily authorized to pay her salary, and, as will be discussed *infra,* Mississippi law designated her as an employee of the county. *See*

Miss.Code Ann. §§ 9–7–123 and 9–7–126. However, these facts, which are wholly dependent on state law, rather than federal, do not outweigh other considerations which are present here. For example, in the case at bar, it is undisputed, and was in fact argued, that only Doyle had the power to hire, fire, and supervise Paxton. *See* Miss. Code Ann. § 9–7–126 (circuit clerk shall select and supervise deputy clerk's public duties); *see also* Op.Miss.Att'y Gen. (Feb. 25, 1985) (in response to circuit clerk's question, attorney general advised that although county pays deputy clerk as authorized under state statute, "he or she is still your deputy"); Op.Miss.Att'y Gen. (Oct. 18, 1983) (employment of deputy circuit clerk is "at the will and pleasure of the Circuit Clerk and may be terminated by the Clerk").[1] The testimony adduced at trial further showed that Doyle did not consult with the Board before making employment decisions, nor did the Board exercise any supervisory powers over either Doyle or Paxton.

In addition, the nature of Paxton's duties demonstrates substantial contact with the public in her official capacity as the deputy circuit clerk, the title itself being indicative of the representative nature of the position. Finally, Miss.Code Ann. § 9–7–123 empowers the circuit clerk, with the approbation of the court, to appoint deputy clerks who, upon taking the oath of office, "shall have power to do and perform all the acts and duties which their principal may lawfully do...." This appears to put the deputy clerk second in command in the circuit clerk's office.

Several cases from other jurisdictions which have been favorably cited by the Fifth Circuit bolster this conclusion. *See Owens v. Rush,* 654 F.2d 1370, 1376 (10th Cir.1981) (court found that undersheriff was within personal staff exception and thus outside Title VII coverage based in part on fact that he served at pleasure of sheriff, who had plenary power to appoint

and remove him; that this power derived from state law "shows that the state intends for the Undersheriff to be personally accountable to only one public official"); *Ramirez v. San Mateo County District Attorney's Office,* 639 F.2d 509, 513 (9th Cir.1981) (district attorney had exclusive power to select and retain deputy district attorney; "[s]uch a level of personal accountability is consistent with the highly sensitive and confidential nature of the work which deputies perform.... [This] is precisely the sort of job Congress envisioned to be within the 'personal staff' of that official and thus exempt from Title VII"); *cf. Curl v. Reavis,* 740 F.2d 1323 (4th Cir.1984) (among factors considered in determining that personal staff exception did not apply were fact that deputy sheriff's position was created and her compensation paid by county pursuant to state law and lack of evidence of " 'highly intimate and sensitive' " working relationship with sheriff, who did not directly supervise deputy).

The court thus finds that although Doyle's action in terminating Paxton was blatantly violative of Title VII, Paxton was a member of Doyle's personal staff and thus outside the coverage of Title VII.

### B.

■ The court turns next to the question of whether these defendants are liable under § 1983 for the Fourteenth Amendment violation. The analysis is different from that used for Title VII, for whereas federal law is the focus in Title VII, state law is the central player for purposes of § 1983. As noted earlier, Paxton relies on a state statute which provides that a deputy circuit clerk is an employee of the county, the circuit clerk having all hiring and supervisory authority over her. Miss.Code Ann. § 9–7–126.

Humphreys County may incur § 1983 liability for Doyle's actions through its gov-

---

1. Although opinions from the state attorney general are not binding on the court, they are persuasive authority and accorded deference. *See Kneeland v. National Collegiate Athletic Association,* 850 F.2d 224, 228 (5th Cir.1988), *cert.*

*denied,* 488 U.S. 1042, 109 S.Ct. 868, 102 L.Ed.2d 991 (1989); *Southern Bell Telephone & Telegraph Co. v. City of Meridian,* 154 F.Supp. 736, 742 (S.D.Miss.1957).

erning body, the Board of Supervisors, in two ways. First, "a [county's] final policymakers are held effectively to have made policy or condoned creation of a custom by ratifying the unconstitutional or illegal actions of subordinate officers or employees." *Turner v. Upton County*, 915 F.2d 133, 136 (5th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 788, 112 L.Ed.2d 850 (1991). And second, "the [county] may be held liable for the illegal or unconstitutional actions of its final policymakers themselves as they engage in the setting of goals and the determination of how those goals will be achieved." *Turner*, 915 F.2d at 136. A single unconstitutional decision is sufficient to create county liability if the decision-maker has been given final policymaking authority by virtue of his office. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480, 106 S.Ct. 1292, 1298, 89 L.Ed.2d 452 (1986) (plurality). The issue of whether a particular official has final policymaking authority is undoubtedly a question of state law. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123, 108 S.Ct. 915, 923, 99 L.Ed.2d 107 (1988); *Pembaur*, 475 U.S. at 483, 106 S.Ct. at 1300.

These decisions lead to a consideration of Miss.Code Ann. § 9–7–126. This statute mandates disbursal from the county treasury certain amounts for the "purposes of defraying the salaries of deputy circuit clerks...." Miss.Code Ann. § 9–7–126(1). It concludes (with language which is now well known to this court): "Deputy circuit clerks employed under authority of this section shall be deemed employees of the county. The clerk shall select and supervise their public duties." *Id.* Implicit in this right to select is the attendant right to terminate. *See* Ops.Miss.Att'y Gen. (Feb. 25, 1985 and Oct. 18, 1983).

■ The court is of the opinion that this statute unequivocally made Paxton a county employee for purposes of § 1983 [2] and

vested in Doyle the final policymaking authority to make all employment decisions regarding his chosen deputy clerks. *See Pembaur*, 475 U.S. at 484, 106 S.Ct. at 1300 (policymaker is one who has final authority to make choice between several alternatives). That Doyle was a final policymaker is supported not only by the plain language of the statute but also by the fact that the Board had no right to review Doyle's decision. *Cf. Worsham v. City of Pasadena*, 881 F.2d 1336, 1340–41 (5th Cir. 1989) (because local law provided for review of decision to terminate plaintiff through appeal to city council, city officials who discharged plaintiff were not, in that respect, final policymakers). As Doyle was a final policymaker with respect to employment decisions involving deputy clerks like Paxton, the county, through its Board members in their official capacities, is liable for Paxton's unconstitutional discharge. That the county did not authorize Doyle to violate the Constitution does not absolve it of liability, for "[w]here a *final* policymaker abuses the power vested in his position to the detriment of a citizen, that abuse can be the basis for suit being brought under section 1983...." *Turner*, 915 F.2d at 137 n. 3 (emphasis in original).

■ The court further finds that these defendants, although liable in their official capacities, are not individually liable for any constitutional violation. Certainly, Paxton immediately notified some of the Board members of her termination and the reason given by Doyle. However, no evidence was presented that they knew beforehand of the decision or that they conspired in any way with Doyle to effect Paxton's termination. Indeed, although they may have told Paxton or her mother-in-law that Doyle's actions were wrong, they have not, by doing so, committed a violation of the Constitution. In fact, there was nothing they could do either to stop or

---

**2.** *See generally Moore Bayou Water Association, Inc. v. Town of Jonestown*, 628 F.Supp. 1367, 1369 (N.D.Miss.1986) (while district court "must seek to effectuate legislative intent in construing a particular statute, primary reliance must be placed on language of the statute itself. Resort to materials extrinsic to the statute ... is neces-

sitated only when the statutory language is ambiguous or compliance would yield an absurd result"); *Dobbs v. Train*, 409 F.Supp. 432, 436 (N.D.Ga.1975) (words of statute are to be given their plain and natural meaning unless manifest injustice or absurdity would result), *aff'd*, 559 F.2d 946 (5th Cir.1977).

remedy the discharge. These defendants can be held individually liable only if they violate a clearly established constitutional right. Although Doyle certainly violated Paxton's rights, these individual defendants did not.

### III.

█ The final question to be resolved, then, is the amount of Paxton's damages. The first item of damages recoverable by Paxton is lost wages in the sum of $4,880.54, representing seven months of actual unemployment at $697.22 per month (Paxton's monthly net pay). This seven-month period spans from August, 1988 (Bearden, as Board president, voided her August paycheck after learning of Paxton's termination), through February, 1989 (Paxton found temporary employment at the end of the month), and is the only period of actual lost wages for which Paxton seeks recompense. Defendants have not suggested that this amount should be adjusted in any way, either because it is unreasonable or because Paxton did not properly mitigate.

Paxton is also entitled to recover for mental and emotional distress and loss of reputation. As the Fifth Circuit has noted:

> Emotions are intangible but they are none the less perceptible. The hurt done to feelings and to reputation by an invasion of constitutional rights is no less real and no less compensable than the cost of repairing a broken window pane or a damaged lock. Wounded psyche and soul are to be salved by damages as much as the property that can be replaced at the local hardware store.

*Baskin v. Parker*, 602 F.2d 1205, 1209 (5th Cir.1979).

At trial, Paxton described the embarrassment of having to tell a prospective employer that she was fired from her previous job; her anguish over delinquent debts, the attendant loss of standing in the community, her plummeting credit rating, and her inability to obtain credit; the humiliation of being summoned before a justice court judge because of those outstanding debts; and the pain of losing her job solely because she gave birth—after having had several miscarriages. The court is of the opinion that $15,000.00 is a reasonable amount to award for these harms.

In a § 1983 action, a plaintiff may be entitled to the equitable remedy of front pay in appropriate circumstances. In this case, however, it is not available. Paxton's argument for front pay follows this path: If Doyle had not unlawfully terminated her, she would have been named by the Board as his successor upon his death. The Board certainly had the power to appoint Doyle's successor to the office of circuit clerk when he died in the middle of his term; however, and most importantly, it was not legally required to place any particular person, including the deputy clerk, in that position. Paxton offered no more than speculation that the Board would have appointed her as the interim circuit clerk (although Doyle's deputy clerk, Paxton's replacement, was in fact named).

Finally, in the pretrial order, her proposed findings of fact and conclusions of law, and her post-trial brief, Paxton alludes to punitive damages. These were not pled in the amended complaint. Even if they were properly before the court and had been adequately argued by the parties, they are not recoverable in this case since only official liability exists and punitive damages only attach in a § 1983 action when a defendant is found individually liable.

Paxton may therefore recover from defendants in their official capacities the sum of $19,880.54. As a prevailing party, she is also entitled to recover her reasonable attorney's fees and costs. An application for such should be filed in this court, and a supporting brief discussing the applicable *Johnson* factors forwarded to the undersigned no later than February 28, 1992. Defendants shall respond by March 10, 1992. With regard to this remaining issue, the parties and their counsel are encouraged "to utilize their best efforts to understandingly, sympathetically, and professionally arrive at a settlement as to attorney's fees. Although a settlement general-

ly leaves every litigant partially dissatisfied, so does a judicial award for attorney's fees." *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 720 (5th Cir. 1974).

A final judgment shall issue.