United States Court of Appeals,

Fifth Circuit.

No. 91–8108.

Mary TURNER a/k/a Mary Turner Hind, Plaintiff–Appellee,

v.

UPTON COUNTY, TEXAS and Glenn Willeford, Individually, Etc., Defendants–Appellants.

Aug. 5, 1992.

Appeals from the United States District Court for the Western District of Texas.

Before GOLDBERG, HIGGINBOTHAM, and DAVIS, Circuit Judges.

PER CURIAM:

Plaintiff Mary Turner brought this § 1983 action against Upton County, its former sheriff, the district attorney, and others, alleging that the individual defendants conspired to subject her to a "sham trial" for possession of contraband. In essence, she alleged that the sheriff paid an informant to plant drugs at Turner's business premises, and that the sheriff and informant later conspired, along with the district attorney, to force Ms. Turner to stand trial on a trumped-up charge. A jury returned a verdict against the sheriff, the district attorney and Upton County, but the district court entered a judgment notwithstanding the verdict as to the district attorney on the ground of insufficient evidence.

The sheriff and Upton County appeal from the denial of their motions for judgment notwithstanding the verdict arguing, as they did below, that the evidence was insufficient to sustain the verdict as against them, as well. We have reviewed the transcript of the trial proceedings and are driven to the conclusion that the evidence necessary to support the jury verdict is lacking. Accordingly, we REVERSE.[1]

I.

On August 7, 1985, Plaintiff–Appellee Mary Turner was working at her family-owned

---

[1] We do not address the other points of error raised in appellants' briefs.

convenience store in Rankin, Texas when Walter Woolf, an acquaintance of Turner's, entered the store. After engaging in brief conversation with Turner, Woolf spent several minutes loitering among the aisles of merchandise and then hurriedly left the store. Later that day, Upton County Sheriff Glenn Willeford, deputies Benny Clifton and Ron Roberts, and dispatcher Deanna Coleman entered the store with a search warrant and proceeded to search the store. Sheriff Willeford discovered a small plastic bag containing methamphetamine among the merchandise in the area of the store where Woolf had loitered earlier that day.

Sheriff Willeford placed Turner under arrest. Turner was charged with possession of methamphetamine, a felony, and indicted by a grand jury. At her trial, which began on March 24, 1987, both Woolf and Sheriff Willeford testified for the government. Woolf testified that he had seen Turner purchase the methamphetamine at a motel shortly before the search of her store.[2]

After four days of trial, the government rested its case against Turner. At the end of the proceedings that day, a meeting was held at which Turner, her attorney, District Attorney J.W. Johnson, Assistant District Attorney Albert Valdez and Sheriff Willeford were present. At that meeting, Valdez showed Turner a photograph that had not been admitted as evidence. That photograph showed Woolf's view of the motel from which he had allegedly seen Turner purchase the methamphetamine in August of 1985. The trees in the photograph contained no leaves. Turner pointed out that Woolf could not have seen her at the motel because in August the trees would have been full of leaves, thus blocking the view of the motel from the site of the photograph. The parties agreed that the photograph established Turner's innocence and the district attorney dismissed the case the next day.

II.

_____

[2]There is no evidence in the record before us as to the substance of Sheriff Willeford's testimony at the trial.

On December 8, 1988, Turner filed suit against Upton County, Woolf, Sheriff Willeford, and Larry Dale Jackson, one of the government's witnesses at Turner's criminal trial. On March 16, 1989, Turner added District Attorney Johnson as a defendant. Woolf did not answer. Turner's suit, which was based on 42 U.S.C. § 1983, alleged that Sheriff Willeford, in violation of Turner's due process rights, paid Woolf to plant the methamphetamine in her store and then seized the substance pursuant to the search warrant, leading to her arrest, indictment and criminal trial. Turner also alleged that Sheriff Willeford conspired with District Attorney Johnson to prosecute her on what they knew to be a false charge, and to attempt to convince her to plead guilty to the offense, knowing that she was innocent.

The district court granted summary judgment in favor of Upton County, holding that it could not be held liable for the alleged acts of the sheriff and district attorney. On appeal from a certified judgment under Rule 54(b), Fed.R.Civ.P., this court reversed the summary judgment and remanded the case for trial. *Turner v. Upton County, Texas,* 915 F.2d 133 (5th Cir.1990), *cert. denied,* ⸻ U.S. ⸻, 111 S.Ct. 788, 112 L.Ed.2d 850 (1991). This court reasoned that "the sheriff's participation as a coconspirator, constituting as it would an abuse of his authority as the ultimate repository of law enforcement in Upton County, would render the county liable as well." *Id.* at 137. The court applied the same reasoning with respect to the district attorney: "The sheriff's and the district attorney's alleged participation in the conspiracy, if proven, will suffice to impose liability on the county." *Id.* Finally, this court observed that liability could attach for conduct of other defendants, even those who were not state actors, so long as that defendant joined the conspiracy. *Id.* at n. 6. This court also held that trial court's ruling that a two-year statute of limitations applied to Turner's allegations was "the law of the case" because Turner had not appealed that issue. Thus, Sheriff Willeford and Upton County could be held liable only for their actions taken from and after December 8, 1986, and that District Attorney Johnson and the County could be held liable only for their actions taken from and after March 16, 1987. The events surrounding the alleged planting of the drugs, Turner's arrest and her indictment were no longer available as a cause of action: The

defendants could only be held liable for conduct pertaining to the sham trial.

On remand, the district court conducted a jury trial. Plaintiff Turner was the first witness. She testified about the events surrounding her arrest and the sham trial. Specifically, she testified that she never engaged in any narcotics activity, and that Woolf's testimony to that effect at her sham trial was untruthful. Turner did not offer any testimony with respect to the content of Sheriff Willeford's testimony at the sham trial, nor did she offer any testimony establishing that Sheriff Willeford was in cahoots with Woolf.[3] Charlotte Hogan testified that Woolf admitted to her that Sheriff Willeford had paid him to plant the dope in Turner's store. But the district court properly sustained the defendants' hearsay objection and ruled that such evidence was not admissible as against Sheriff Willeford or Upton County.[4] Deputy Sheriff Benny Clifton testified that Sheriff Willeford summoned him to assist with the search of Turner's store. According to Clifton, Sheriff Willeford told him that "information concerning this particular search and the basis of the search warrant had already cost [Sheriff Willeford] $500.00." Clifton did not testify that Sheriff Willeford admitted to paying Woolf $500 to plant the dope, only that Willeford said he had paid Woolf for the information leading up to the search and ultimate arrest of Turner.[5] No other witness testified concerning the substance of Sheriff Willeford's testimony at the sham trial, nor did Turner offer into evidence the transcript of the sham trial proceedings. Thus, the jury was not apprised of the sheriff's testimony.

---

[3]She did offer her theory that Sheriff Willeford's motive was to subject her to trumped-up charges and impugn her integrity. However, she had nothing to offer with respect to Willeford's alleged role in the conspiracy. In fact, she opined that it was Willeford who proposed that the plastic bag containing the narcotics be fingerprinted—an investigative effort seemingly inconsistent with her allegation that Sheriff Willeford knew that Woolf planted the drugs in Turner's store.

[4]That testimony was not admissible under Rule 801(d)(2)(E), Fed.R.Evid., because the statement, although made by an alleged co-conspirator, was not made *in furtherance of the conspiracy.*

[5]Clifton did testify that he was fired by Sheriff Willeford and that "the sheriff's verbal statement to [him] was that [he was] cutting [the sheriff's] throat on Mary Turner." 7R. at 66. When asked what the sheriff had meant by that, Clifton was at a loss: "You would have to ask the sheriff. I asked him the same thing and I was told he didn't have to tell me a damn thing." *Id.* at 66–67.

After Turner rested, the defendants moved for a directed verdict. The district court granted Jackson's motion, but denied all others.[6] The defendants opted to rest without presenting any evidence in their defense. The district court duly instructed the jury and submitted the case for the jury's deliberation. The jury reached a verdict. It found that Sheriff Willeford individually denied Turner's due process rights and that Sheriff Willeford, District Attorney Johnson and Woolf conspired to violate her due process rights. The jury awarded $500,000 compensatory damages against Sheriff Willeford, District Attorney Johnson and Woolf, $1,500,000 punitive damages each against Sheriff Willeford and District Attorney Johnson, and $100,000 punitive damages against Woolf. The district court entered final judgment in accordance with the jury's verdict, imposing joint and several liability for the compensatory damages against Woolf, Sheriff Willeford and the County.

Sheriff Willeford, the County and District Attorney Johnson each filed motions for judgments notwithstanding the verdict. The district court denied Sheriff Willeford's and Upton County's motions, but granted District Attorney Johnson's, holding that there was no evidence that District Attorney Johnson had conspired with anyone to violate Turner's due process rights. Sheriff Willeford and Upton County appeal the judgments against them.[7]

III.

The County and Sheriff Willeford argue that the district court erred in denying their motions for directed verdicts and judgments notwithstanding the verdict because the evidence is insufficient to support the jury's determination that Sheriff Willeford violated Turner's due process rights, either individually or as part of a conspiracy.

This case, as any appeal from the denial of a judgment notwithstanding the verdict, seeks

---

[6]Turner agreed that the evidence against Jackson was woefully inadequate and consented to a nonsuit.

[7]Turner does not appeal the district court's dismissal of the judgment against District Attorney Johnson.

enlightenment from the pellucid words of *Boeing Co. v. Shipman:*

> On motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all of the evidence—not just that evidence which supports the non-mover's case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable [persons] could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded [persons] in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury.

411 F.2d 365, 374–75 (5th Cir.1969) (en banc).

The County and Sheriff Willeford rely on the district court's prior statute of limitations ruling for their argument. Although the district court allowed the jury to hear evidence of the events surrounding the planting of the drugs, Turner's arrest and her indictment, they argue that those events occurred outside the statute of limitations time period and that the evidence could not be considered by the jury in support of its verdict. Therefore, the argument continues, the jury could consider only evidence, if any, that Sheriff Willeford committed acts in violation of Turner's due process rights during Turner's criminal trial, as that is the only relevant event occurring after December 8, 1986.

In addressing the jury's finding that Sheriff Willeford conspired with Woolf and District Attorney Johnson to violate Turner's due process rights, the County and Sheriff Willeford first point to the fact that in granting District Attorney Johnson's motion for judgment notwithstanding the verdict, the district court held that there was no evidence that District Attorney Johnson entered into or participated in a conspiracy to violate Turner's due process rights. They argue that as Turner has not appealed the granting of that motion, the law of this case is that District Attorney Johnson and Sheriff Willeford did not enter into a conspiracy. Thus, the argument continues, the only possible conspiracy would be between Sheriff Willeford and Woolf, and, considering only the events at Turner's criminal trial, Turner has failed to show any evidence of such a conspiracy.

Our previous opinion in this case held that the County could be liable for any illegal or unconstitutional actions by Sheriff Willeford in his capacity as the final policymaker in the area of law enforcement in Upton County. *Turner,* 915 F.2d at 136. Those actions include, but are not limited to, his participation in a conspiracy with another party, whether or not that party is a state actor. *Id.* at 136–37. Thus, Upton County can be held liable either for Sheriff Willeford's actions individually or for the actions of Sheriff Willeford or a co-conspirator in furtherance of a conspiracy to violate Turner's due process rights. Critically, the actionable injury in a civil conspiracy flows from the overt acts of the defendants, not from the mere continuation of a conspiracy. *Helton v. Clements,* 832 F.2d 332, 335 (5th Cir.1987); *Singleton v. City of New York,* 632 F.2d 185, 193 (2d Cir.1980), *cert. denied,* 450 U.S. 920, 101 S.Ct. 1368, 67 L.Ed.2d 347 (1991); *Kadar Corp. v. Milbury,* 549 F.2d 230, 235 (1st Cir.1977); *Hoffman v. Halden,* 268 F.2d 280, 295 (9th Cir.1959). Therefore, whether liability rests on a conspiracy between Sheriff Willeford and Woolf or on Sheriff Willeford's actions alone, there must be sufficient evidence of an overt act committed during the time period not barred by the statute of limitations.

The County and Sheriff Willeford have misconstrued the effect of the statute of limitations on this action. Although the statute of limitations clearly destroys the utility of the events occurring before December 8, 1986 as the basis of a *cause of action, Turner,* 915 F.2d at 135, the statute does not make relevant evidence of the creation and pursuit of the conspiracy inadmissible at trial. Turner cannot recover for damages arising from any acts Sheriff Willeford committed before that date, but the statute of limitations does not preclude the jury from considering those events as evidence in support of its verdict that Sheriff Willeford committed overt acts in furtherance of the scheme after December 8, 1986, thereby violating Turner's due process rights. In short, the jury was not limited to considering only evidence of the events occurring at Turner's criminal trial; neither are we so limited in our review of the evidence. Nevertheless, we conclude that the evidence was insufficient to sustain the verdict.

To support an inference that Sheriff Willeford (and hence Upton County) acted to deprive Turner of her due process rights, Turner had to produce some evidence that Willeford was aware that the charges against Turner were in fact trumped up. Turner's theory of the case was that Sheriff Willeford paid Woolf to plant the drugs in Turner's store and thus knew, when he testified at the sham trial, that Turner was not guilty of the drug charges against her. But no evidence was admitted against Willeford establishing his participation in, or knowledge of, Woolf's successful effort to plant the dope in Turner's store. Neither Turner nor Hogan nor Clifton testified to facts that would allow such an inference. All we know from Turner is that she did not transact in any narcotics, that the dope discovered in her store did not belong to her, and that Woolf's contrary testimony at the sham trial was perjurious. Hogan's testimony verified that the dope was not Turner's because Woolf admitted to Hogan that he planted the dope and that he was paid $500 to do so. Although that testimony constituted a nonhearsay party admission as to Woolf, *see* Rule 801(d)(2)(A), Fed.R.Evid., it was pure, unadulterated hearsay as to Sheriff Willeford and Upton County and therefore inadmissible as to them. Thus, Hogan's testimony could not provide the necessary link between Woolf's actions and the sheriff's alleged, knowing participation.[8] Finally, Clifton's testimony at most hinted that the sheriff was engaged in some foul play, but again, his testimony was vague on the critical issue of whether the sheriff had participated in, or acquiesced to, Woolf's planting the dope in Turner's store. The fact that the sheriff testified for the prosecution and against Turner at her criminal trial could have served as the necessary overt act in furtherance of the conspiracy if only there was evidence establishing that Sheriff Willeford was in cahoots with Woolf and thus testified falsely at the sham trial. Because there was no admissible evidence to that effect, we must conclude that the evidence was insufficient to prove that Sheriff Willeford launched or fueled the prosecution of the baseless charges against Turner.

IV.

---

[8]Of course, had Woolf testified that the sheriff paid him to plant the dope, that evidence would have permitted the jury to conclude that Sheriff Willeford was involved in the scheme to maliciously prosecute Turner.

It is rare that we raise the ensign "stop" to a jury verdict. Ordinarily we yield to the jury, recognizing that, when approaching an evidentiary intersection, the jury possesses the right-of-way. But *Boeing* confers upon the appellate court a license to reverse the jury's direction either when the oncoming traffic is unusually heavy or when there is no petrol to fuel the verdict. In this case, the tank of evidence contained nothing more than fumes.

The judgments against Sheriff Willeford and Upton County are hereby REVERSED. The district court shall enter take-nothing judgments in their favor.