**Sheila CAWTHON and Theresa Cawthon, Plaintiffs,**

**v.**

**The CITY OF GREENVILLE, a Municipal Corporation Organized Under the Laws of the State of Mississippi, Defendant.**

**No. GC89–94–B–O.**

United States District Court, N.D. Mississippi, Greenville Division.

May 18, 1990.

Stan Perkins, Greenville, Miss., for plaintiffs.

Susan D. Fahey and Gary Friedman, Jackson, Miss., for defendant.

## MEMORANDUM OPINION

BIGGERS, District Judge.

This cause comes before the court on the defendant's motion for summary judgment. Having read the pleadings, motion and the parties' memoranda, the court is prepared to rule in accordance with Fed.R.Civ.P. 56.

### I. FACTS

The plaintiffs sue the City of Greenville under 42 U.S.C. § 1983, alleging that their constitutional rights were deprived pursuant to municipal policy when they were assaulted by a Greenville police officer on the morning of February 2, 1988.

Viewed in the light most favorable to the plaintiffs, the relevant facts are as follows. Officer Levion Gooch was acting desk sergeant when the plaintiffs and a third person, Michael Duvall, were brought into the station to be booked for various misdemeanor charges. Gooch was the highest ranking officer in the booking area, and as desk sergeant, her duties included handling the radio and incoming telephone calls, assisting with paperwork, and booking prisoners. She was not to search any female prisoners unless there was no female matron on duty at the jail at the time the prisoners were brought in for booking.[1]

Gooch assaulted each of the three prisoners during an approximate ten minute period. The three handcuffed prisoners were brought into the station early in the morning, and several other officers were present in the booking area. For reasons which are disputed, Gooch became extremely angry with one of the plaintiffs, Theresa

Cawthon, came out from behind the booking counter, repeatedly slapped Theresa, dragged her by the hair out of sight of the other prisoners and then banged Theresa's head several times against a wall. When Sheila Cawthon complained about the treatment her sister was receiving, Gooch turned towards Sheila and repeatedly slapped her, bursting her lip and knocking her to the floor. Michael Duvall, who was being restrained by two officers, was also either kicked or slapped by Gooch. He too was knocked to the floor. Gooch then returned to Theresa and placed her boot upon Theresa's neck. At some point during the fray, an officer in the booking area shouted "That is enough!", and Gooch ended her assaults. The plaintiffs received minor bruises and contusions in the incident.

Seven other police officers witnessed portions of Gooch's assaults, and all of the officers who witnessed Gooch's actions later agreed that Gooch used excessive force against the prisoners.[2] However, during the assaults, none of the officers made any attempt to physically intervene and protect the prisoners. Instead, the officers radioed Lieutenant Kenneth Campbell, the shift commander, and summoned him to the station immediately. By the time Campbell arrived the altercation had ended. However, due to the serious nature of the incident, Campbell immediately requested a statement from each witnessing officer, and Gooch was later fired for her use of unreasonable force against the prisoners. None of the seven officers who witnessed Gooch's assaults were officially reprimanded for their failure to protect the three prisoners.

The plaintiffs produce some evidence that Gooch was prone to acting violently, and that the City was aware of this tendency before she assaulted the plaintiffs. In

---

1. It is unclear whether a matron was on duty at the jail on the night in question. The record reveals only that a matron is currently on duty every night at the Greenville jail, and that in the past there have been some "staggered periods" when the City has operated without one late at night. With no matron on duty, it would have been Gooch's responsibility to search only female prisoners.

2. While the plaintiffs' brief alleges that five officers were present at some time during the assaults, the deposition of Lieutenant Kenneth Campbell reveals that up to seven officers witnessed at least some portion of Gooch's outburst.

August, approximately six months before Gooch assaulted the plaintiffs, the afternoon jailor filed a complaint against Gooch and alleged that she used unnecessary force while attempting to put a twelve-year-old shoplifting suspect into a cell block. Gooch was orally reprimanded by Officer Wynn, the chief of police, for using bad judgment and not requesting assistance from fellow officers.[3] However, the record does not reveal whether Gooch actually used excessive force as alleged in the jailor's complaint.

Within six months prior to her assault upon the plaintiffs, Chief Wynn was also informed that Gooch was receiving medical care for a mental condition. After discussing Gooch's situation with a doctor, Wynn ordered Gooch's weapon taken and her reassignment to a position as desk sergeant, and Lieutenant Campbell was instructed not to let her back "on the street" until further notice.[4] According to Campbell, Gooch was placed there so that she would not come into direct contact with the public.

Prior to Gooch's assaults upon the plaintiffs, Campbell also expressed his concern to Chief Wynn regarding Gooch's performance. Specifically, he informed Wynn that Gooch exhibited rapid mood swings and that he was afraid she might become violent. At that time, however, Campbell had never witnessed Gooch commit any violent acts and had only seen her commit small procedural or disciplinary errors. She also sometimes acted as though she didn't have to follow orders.[5]

In response to Campbell's input, Chief Wynn ordered Campbell to document any inappropriate behavior by Gooch which would warrant disciplinary action, and stated that sufficient documentation was needed to safeguard against potential legal liability. Although Campbell was concerned with Gooch's behavior, no longer wanted her on his shift and had been advised to document any incident warranting disciplinary action, he documented no incidents of misconduct from September, 1987, until Gooch assaulted the plaintiffs the following February. In fact, Campbell concedes that, at times, Gooch was an excellent officer.

The defendant argues that, on these facts, the plaintiffs have failed to sufficiently demonstrate that they were injured pursuant to a city policy, practice or custom. In contrast, the plaintiffs allege that a municipal policy or decision can be established through four separate theories:

1) That the defendant was aware of Gooch's propensity for violence, yet failed to properly protect the plaintiffs;

2) That Chief Wynn's failure to properly and fully discuss the nature of the August complaint with Gooch resulted in her assaulting the plaintiffs;

3) That the city failed to promulgate sufficient rules and regulations concerning when to curb a superior officer's use of excessive force; and

4) That the inaction of the seven witnessing officers indicates a common policy within the police department to condone acts of violence committed by police officers upon the public.

## II. LAW

■ To recover from a municipality under the Civil Rights Act, the plaintiffs must demonstrate that their constitutional rights were deprived pursuant to some city policy, practice or custom. *Monell v. Dept. of Social Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The plaintiffs may not prevail on a theory of respondeat superior liability, and they must demonstrate that the policy, practice or custom was the moving force behind their constitutional

---

**3.** A written reprimand was also placed in Gooch's personnel file, but Gooch only remembers receiving an oral reprimand.

**4.** The record does not reveal the nature and extent of Gooch's psychological condition, the details revealed concerning Gooch's condition or with whom the Chief spoke.

**5.** For example, Gooch was reprimanded for failing to follow proper radio procedure and for taking her break at an improper time. Additionally, she occasionally acted rudely while performing her duties.

deprivations. *Id.* at 694, 98 S.Ct. at 2037; *Polk County v. Dodson,* 454 U.S. 312, 326, 102 S.Ct. 445, 454, 70 L.Ed.2d 509 (1981). Because the plaintiffs bear the burden of proof on these elements at trial, they also bear the burden of withstanding the defendant's motion for summary judgment. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

The Fifth Circuit has defined an official policy, practice or custom as:

1) A policy statement, ordinance, regulation or decision that is officially adopted and promulgated by the municipality's law-making officers or by an official to whom the law-makers have delegated policy-making authority; or

2) A persistent widespread practice of city officials or employees, which, *although* not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body has delegated policy-making authority.

*Bennett v. City of Slidell,* 735 F.2d 861, 862 (5th Cir.1984) (en banc), *cert. denied,* 472 U.S. 1016, 105 S.Ct. 3476, 87 L.Ed.2d 612 (1985). In light of the Fifth Circuit's definition of policy, practice or custom, the court will rule on each of the plaintiffs' theories in turn.

### A. Gooch's Propensity for Violence

The parties do not challenge the constitutionality of Greenville's official regulations regarding the duties of its desk sergeants. Instead, the plaintiffs claim that the City is liable because it knew of Gooch's alleged propensity for violence, yet failed to take sufficient steps to protect the public. The plaintiff cites no relevant authority directly in support of this proposition.[6]

■ The Supreme Court recently determined that a municipality can be held liable under § 1983 for a failure to properly train its police force. *Canton v. Harris,* 489 U.S. 378, ——, 109 S.Ct. 1197, 1204, 103 L.Ed.2d 412, 427 (1990). To hold a city liable under this theory, a plaintiff must show that the municipality knew to a high degree of certainty that some constitutional violation would occur unless a more effective training policy was implemented, and that the city shirked its responsibility to the public by demonstrating a deliberate indifference to the need for more effective training.

■ The defendant urges the court to apply the *Harris* deliberate indifference standard to the city's transferral of Gooch to the position of desk sergeant, and the court finds the defendant's argument persuasive. As in *Harris,* the present case involves a valid police procedure which was unconstitutionally applied by a municipal employee. The question is whether the city may be held liable for not preventing Gooch's assaults because it made a conscious decision, which rose to the level of official policy, to forego protecting the constitutional rights of the public. *See Harris,* 489 U.S. at ——, 109 S.Ct. at 1204, 103 L.Ed.2d at 427. In explaining its use of a deliberate indifference standard, the *Harris* Court stated:

To adopt lesser standards of fault and causation would open municipalities to unprecedented liability under § 1983. In virtually every instance where a person has had his or her constitutional rights violated by a city employee, a § 1983 plaintiff will be able to point to something the city 'could have done' to prevent the unfortunate incident.... Thus, permitting cases against cities ... on a lesser standard of fault would result in de facto respondeat superior liability on municipalities—a result ... rejected in *Monell.*

489 U.S. at ——, 109 S.Ct. at 1206, 103 L.Ed.2d at 428–429. *Cf. Stokes v. Bullins,*

---

**6.** Of the three cases cited in the plaintiffs' memorandum, two involve respondeat superior liability under common law, and the last addresses individual liability under § 1983 for failure to supervise.

844 F.2d 269, 273 (5th Cir.1988) (some conscious choice, not mere negligence, necessary for liability regarding municipality's failure to act).

Applying the appropriate standard, the court finds no evidence of deliberate indifference on the part of the defendant. Through Chief Wynn, the City consistently implemented reasonable safeguards to respond to each new bit of information it received about Gooch. Wynn orally reprimanded Gooch after the complaint was filed in August. Once he became aware that she was receiving treatment for a mental condition, he took her off street duty and her gun was removed. He placed her in a structured environment where she verbally interacted with prisoners from behind a counter and was only rarely required to remove property from handcuffed, female prisoners in the presence of fellow officers. In this role, she was never required to physically subdue any prisoners. Considering her limited exposure to inmates and the public, the Chief had little, if any, reason to suspect that Gooch might flagrantly disregard regulations and leap from behind the counter to assault three handcuffed prisoners who were not posing any kind of physical threat. Although the shift commander complained of Gooch's performance and possible mental instability, he was not a mental health professional and his documented examples of inappropriate behavior pertained to small procedural and disciplinary problems. In fact, for the five months preceding Gooch's assault upon the plaintiffs, the shift commander recorded no problems regarding Gooch's performance even though he was ordered to do so should Gooch deserve any disciplinary action.

While hindsight reveals that Chief Wynn underestimated Gooch's irascibility, his error does not rise to the level of deliberate indifference, and the court will not second-guess the Chief's decision on this matter. Close ex post scrutiny of municipal decisionmaking "is an exercise ... the federal courts are ill-suited to undertake." *Harris*, 489 U.S. at ——, 109 S.Ct. at 1206, 103 L.Ed.2d at 429.

### B. Gooch's Prior Reprimand

■ The plaintiffs alternatively assert that the Chief's failure to more strongly reprimand Gooch for the complaint filed by the jailor was a municipal policy which proximately caused the plaintiffs' injuries.

While the August complaint *alleged* that Gooch used excessive force, the investigation report clearly reveals only that Gooch used bad judgment in failing to request assistance from other officers. However, assuming that Gooch should have been reprimanded for using excessive force, the Chief's failure to deliver a more eloquent reprimand can hardly be construed as a conscious policy decision, custom or practice which can be the basis of municipal liability. *See Stokes*, 844 F.2d at 273 (negligence insufficient). Furthermore, the alleged shortcomings of Chief Wynn's reprimand cannot be considered the "moving force" or proximate cause of Gooch's sudden, emotional outburst—which occurred approximately six months later. *Monell*, 436 U.S. at 694, 98 S.Ct. at 2037; *Polk County*, 454 U.S. 312, 326, 102 S.Ct. 445, 454, 70 L.Ed.2d 509 (1981).

### C. Failure to Train

■ The plaintiffs' last two theories of liability rely upon the inaction of the seven witnessing officers as a basis for asserting municipal liability. The plaintiffs assert that noninterference on the part of the officers indicates either the defendant's failure to promulgate proper rules and regulations, or a common policy condoning the use of excessive force by the city's police officers.

In essence, the first of these allegations charges that the defendant failed to adequately train its officers. Therefore, the court will apply the Supreme Court's analysis in *City of Canton, Ohio v. Harris*, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1990).

In *Harris*, the Court held that a failure to adequately train police officers could properly be construed as municipal policy if the municipality demonstrated deliberate indifference to an obvious need for more adequate training with respect to the usual and recurring situations which police offi-

cers could be expected to encounter. *Id.,* 489 U.S. at ——, 109 S.Ct. at 1205, 103 L.Ed.2d at 427–28.

In the present case, the defendant failed to promulgate a regulation authorizing an officer to intervene and physically prevent a superior officer from using excessive force against a person in custody.[7] Rather, department procedure required that a complaining officer summon to intervene another officer of equal or higher rank to the superior whose behavior was questioned, if he or she truly believed that intervention was necessary.

The court finds that any training inadequacy, if present, is not of the sort with which the Court was concerned in *Harris,* for physically intervening and neutralizing a superior officer's use of excessive force is not the type of usual and recurring situation which an officer can be expected to encounter within the normal scope of his or her duties.[8] Indeed, superior officers generally become ripe candidates for promotion and attain their higher rank by demonstrating high standards of professionalism and exhibiting other admirable qualities in performance of their duties, and in this situation, the court cannot assume that proper training should necessarily have included rules regarding when to curb the unwarranted acts of a superior officer. Clearly, there was not such an obvious need for such a regulation that the defendant's failure to promulgate one can be considered deliberately indifferent behavior.

### D. Common Practice of Condoning Excessive Force

Finally, the plaintiffs argue that the witnessing officers' failure to intervene evidences a police department practice of using or tolerating excessive force against the general public "which is so common and well settled as to constitute a custom that fairly represents municipal policy." *Bennett,* 735 F.2d at 862. Mindful of the plaintiffs' burden to withstand the defendant's motion for summary judgment, the court finds that the plaintiffs have failed to produce sufficient evidence supporting this allegation.

■■■ Without additional evidence, the existence of a municipal policy cannot be inferred from a single instance of misconduct by a subordinate non-policymaking employee. *Oklahoma City v. Tuttle,* 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985). Consequently, a policy cannot be inferred merely from Gooch's misconduct. Therefore, the plaintiffs allege that the concerted inaction of the witnessing officers and Chief Wynn's later failure to issue reprimands for their passivity is additional evidence from which the court may reasonably infer that an acknowledged custom of using excessive force existed prior to Gooch's assaulting the plaintiffs.

Although not cited by either party, *Grandstaff v. City of Borger, Texas,* 767 F.2d 161 (5th Cir.1985), lends some support to the plaintiffs' position. In *Grandstaff,* the entire night shift of the Borger police department opened fire upon and killed an innocent person after mistaking him for a fugitive. *Id.* In affirming liability against the city, the Fifth Circuit held that the officers' concerted action indicated a prior existing policy authorizing the reckless use of deadly force, and that a prior unconstitutional policy could also be inferred from the city's subsequent failure to reprimand, discharge or admit error on the part of any of its officers. *Id.* This additional evidence, concluded the court, allowed a factfinder to reasonably infer a municipal policy based on a single incident of conduct. *Id.*

---

7. While Lieutenant Campbell testified that a lower officer was permitted to physically intervene and prevent a superior officer's excessive use of force in emergency situations, he could remember no written official regulation authorizing this type of intervention.

8. While rules limiting the amount of force used against persons in custody are necessary for the competent functioning of any police force,

Gooch's apparent inability to follow the defendant's rules does not, in and of itself, substantiate a claim for failure to train under § 1983. A plaintiff cannot demonstrate the existence of a municipal policy, practice or custom by merely proving that "an otherwise sound program has ... been negligently administered" with respect to an individual officer. *See Harris,* 489 U.S. at ——, 109 S.Ct. at 1206, 103 L.Ed.2d at 428.

**384**

Despite some similarities between the facts in *Grandstaff* and in the present case, the court does not find the rationale of *Grandstaff* controlling. The inferences permitted by the *Grandstaff* opinion approach dangerously close to dissolving the direct liability rationale of *Monell* and imposing respondeat superior liability upon a municipality. Precisely because of this danger, the Fifth Circuit has expressly limited *Grandstaff* to "equally extreme factual situations." *Coon v. Ledbetter*, 780 F.2d 1158, 1161 (5th Cir.1986).

It is readily apparent that any police misconduct in the present case comes nowhere near the extreme factual situation of *Grandstaff*. In the case at bar, the officer which used excessive force was removed from the police force as a result of her misconduct. While the failure of seven other officers to intervene can hardly be condoned as admirable behavior, one officer shouted his disproval at Gooch's actions and several others immediately went to the radio room to summon Lieutenant Campbell. Indeed, the failure of these officers to physically confront a superior officer can hardly be compared to the egregious behavior of the officers who recklessly exercised deadly force in *Grandstaff*. And, unlike the defendant in *Grandstaff*, there is no evidence that the present defendant has attempted to shield itself after the fact by engaging in "unworthy, if not despicable, means to avoid legal liability." *Coon*, 780 F.2d at 1161.

Because the plaintiffs do not proffer sufficient evidence to demonstrate the existence of a custom sanctioning excessive use of force by members of Greenville's police department, the court cannot infer, based solely on Gooch's actions, that such a policy indeed existed on the night the plaintiffs were assaulted. *Tuttle*, 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791. As with the plaintiffs' other theories of liability, this theory also fails.

### III. CONCLUSION

For the foregoing reasons, the court finds that no genuine issue of fact exists as to whether the plaintiffs were injured pursuant to a municipal policy, practice or custom. Consequently, the defendant's motion for summary judgment is well taken and will be granted. An order in conformance with this opinion will this day issue.