Josie GONZALES, Individually and as Mother and Next Friend and in Behalf of Tony Gonzales, a Minor, and Toby Gonzales, Individually and as Father and Next Friend and in Behalf of Tony Gonzales, a Minor, Plaintiffs,

v.

Chris WESTBROOK, Frio County Deputy Sheriff, in his Individual Capacity, and Frio County, Texas, Defendants.

Civil Action No. SA–99–CA–1042–FB.

United States District Court,
W.D. Texas,
San Antonio Division.

Aug. 2, 2000.

Curtis B. Stuckey, Stuckey & Garrigan Law Offices, Nacogdoches, TX, for Josie Gonzales, Toby Gonzales.

Charles Straith Frigerio, San Antonio, TX, for Bruce Burris, Frio County, Texas, Chris Westbrook.

AMENDED ORDER GRANTING DEFENDANT FRIO COUNTY'S MOTION FOR SUMMARY JUDGMENT

BIERY, District Judge.

This alleged excessive force case presents an opportunity for review the state of

the law in these types of cases. Before the Court are defendant Frio County's Motion for Summary Judgment (docket no. 30), plaintiffs' response (docket no. 31) and Frio County's reply (docket no. 32). After careful consideration of the motion, response and reply, the pleadings on file and the entire record in this matter, the Court is of the opinion defendant Frio County's Motion for Summary Judgment should be granted and plaintiffs' claims against the County should be dismissed. Plaintiffs' claims against defendant Chris Westbrook in his individual capacity remain pending for disposition.

## BACKGROUND

This is an excessive force case involving Tony Gonzales, a twelve-year-old, 87 pound boy. The minor was at a friend's home during the evening hours of Thanksgiving, 1998, when Frio County Deputy Sheriff Chris Westbrook and other officers responded to a call made by someone in the house. The deputies arrested young Mr. Gonzales, who had been drinking alcohol, for stealing beer. The juvenile was handcuffed and placed in the back of a patrol car, but escaped and began running away. Deputy Westbrook caught up with the minor and a scuffle ensued during which the boy's leg was broken. The juvenile and his parents maintain the child was on the ground when Deputy Westbrook, who weighs about 270 pounds, intentionally fell on the Tony. They further maintain Deputy Westbrook intentionally struck the minor on the head with a flashlight. Frio County and Deputy Westbrook concede contact occurred and acknowledge Tony's leg was fractured but dispute the remainder of plaintiffs' version of the facts. The County and Deputy Westbrook deny Tony was on the ground and Deputy Westbrook fell on him. They further deny Deputy Westbrook hit Tony with a flashlight. Defendants contend: "Plaintiff Tony Gonzales was tackled by Deputy Chris Westbrook in order to effectuate the arrest of the fleeing suspect."

The juvenile and his parents filed suit alleging Deputy Westbrook is individually liable for a conscious disregard of the child's right to be free from excessive force. Plaintiffs further allege the County is liable pursuant to 42 U.S.C. § 1983 for the alleged excessive force of Deputy Westbrook. Plaintiffs maintain the customs and policies of the Frio County Sheriff's Department were inadequate with respect to training and supervision and said customs and policies led to their alleged constitutional injuries. In their answer, the County and Deputy Westbrook deny Tony was subjected to any unreasonable or excessive force and maintain "if plaintiff Gonzales was injured as a result of his fleeing law enforcement as a juvenile delinquent that the sole proximate cause of his injuries were the negligent and criminal actions of minor plaintiff Tony Gonzales." Before the Court is the County's motion for summary judgment asserting there is no genuine issue as to any material fact and it is entitled to judgment as a matter of law. The County moves for summary judgment contending plaintiffs have failed to show its customs and policies are not adequate and directly resulted in the alleged constitutional deprivation of plaintiffs' rights. Plaintiffs maintain they have met their summary judgment burden of showing liability on the part of the County or, alternatively, they cannot show a custom or policy of abuse because the Frio County Sheriff's personnel records are in the custody of the Federal Bureau of Investigation ("FBI").

## SUMMARY JUDGMENT STANDARD

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Marshall v. East Carroll Parish Hosp. Serv. Dist.*, 134 F.3d 319, 321 (5th Cir.1998).

Once a proper motion has been filed, the nonmoving party may not rest upon mere allegations or denials in the pleadings, but must present affirmative evidence setting forth specific facts which show the existence of a genuine issue for trial. *Celotex Corp.,* 477 U.S. at 322–23, 106 S.Ct. 2548. All summary judgment evidence must be construed "in the light most favorable to the nonmoving party", *Williams v. Time Warner Operation, Inc.,* 98 F.3d 179, 181 (5th Cir.1996) (citing *Lindsey v. Prive Corp.,* 987 F.2d 324, 327 n. 14 (5th Cir. 1993)), and the "evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Palmer v. BRG,* 498 U.S. 46, 49 n. 5, 111 S.Ct. 401, 112 L.Ed.2d 349 (1990) (quoting *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505).

## CUSTOM OR POLICY

■ In order to recover a judgment against a local governmental entity under section 1983, a plaintiff must establish he sustained a deprivation of a constitutional right as a result of some official policy, practice, or custom of that governmental entity. *See Board of County Comm'rs v. Brown,* 520 U.S. 397, 403–04, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997); *Harris v. Victoria Indep. Sch. Dist.,* 168 F.3d 216, 225 (5th Cir.1999). An official "policy" is most commonly defined as a policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy making authority. *See Baltazor v. Holmes,* 162 F.3d 368, 377 (5th Cir.1998); *Eugene v. Alief Indep. Sch. Dist.,* 65 F.3d 1299, 1304–05 (5th Cir.1995), *cert. denied sub nom., Conley v. Eugene,* 517 U.S. 1191, 116 S.Ct. 1680, 134 L.Ed.2d 782 (1996). A municipal policy must be a "deliberate and conscious choice" by a municipal policy-maker. *City of Canton v. Harris,* 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); *Pembaur v. City of Cincinnati,* 475 U.S. 469, 483, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). An official "custom" or "practice" is most commonly defined as a "persistent, widespread practice of municipal officials or employees," which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom which fairly represents municipal policy. Actual or constructive knowledge of such custom or practice must be attributable to the governing body of the municipality or to an official to whom that body has delegated policy making authority. *See Baltazor,* 162 F.3d at 377; *Esteves v. Brock,* 106 F.3d 674, 677 (5th Cir.), *cert. denied,* 522 U.S. 828, 118 S.Ct. 91, 139 L.Ed.2d 47 (1997); *Colle v. Brazos County,* 981 F.2d 237, 244–45 (5th Cir.1993); *Nobby Lobby, Inc. v. City of Dallas,* 970 F.2d 82, 92 (5th Cir.1992); *Johnson v. Moore,* 958 F.2d 92, 94 (5th Cir.1992); *Fields v. City of South Houston,* 922 F.2d 1183, 1192 (5th Cir.1991); *Matthias v. Bingley,* 906 F.2d 1047, 1054 (5th Cir.1990); *Bennett v. City of Slidell,* 735 F.2d 861, 862 (5th Cir.1984), *cert. denied,* 472 U.S. 1016, 105 S.Ct. 3476, 87 L.Ed.2d 612 (1985); *see also Sharp v. City of Houston,* 164 F.3d 923, 935 (5th Cir.1999) (evidence established municipal custom within the police department of "code of silence" regarding sexual harassment of female officers and of retaliation against female officers who complained about same).

■■ In *Monell v. Department of Social Servs.,* the Supreme Court held a governmental entity can be found liable under section 1983 only if the entity itself causes the constitutional violation at issue. 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Respondeat superior or vicarious liability is not a basis for recovery under section 1983. *See Collins v. City of Harker Heights,* 503 U.S. 115, 122–23, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992); *Monell,* 436 U.S. at 691–94, 98 S.Ct. 2018. A municipality may not be held liable under Section 1983 solely because it employs a tortfeasor. It is only when the execution of the government's policy or custom inflicts the injury that the governmental entity may

be held liable under section 1983. *Brown,* 520 U.S. at 403, 117 S.Ct. 1382; *Doe v. Dallas Indep. Sch. Dist.,* 153 F.3d 211, 215–16 (5th Cir.1998).

■ A municipality can be liable for the acts of its officials under section 1983 in two circumstances: first, a municipality's final policymakers are held effectively to have made policy or condoned the creation of a custom by knowingly ratifying the unconstitutional or illegal actions of subordinate officers or employees; and, second, the municipality may be held liable for the illegal or unconstitutional actions of its final policymakers themselves as they engage in the setting of goals and the determination of how those goals will be achieved. *See Turner v. Upton County,* 915 F.2d 133, 136 (5th Cir.1990), *cert. denied,* 498 U.S. 1069, 111 S.Ct. 788, 112 L.Ed.2d 850 (1991).

■ As to the first circumstance, liability based upon an officially sanctioned custom or practice, isolated instances of official misconduct by a governmental entity's nonpolicy making employees are inadequate to prove knowledge and acquiescence by the entity's policymakers. *See Fraire v. City of Arlington,* 957 F.2d 1268, 1278 (5th Cir.1992), *cert. denied,* 506 U.S. 973, 113 S.Ct. 462, 121 L.Ed.2d 371 (1992) (city's failure to discipline police officer for isolated incident involving alleged use of excessive force to effect arrest did not give rise to inference city had official policy authorizing or encouraging police misconduct); *Bennett,* 728 F.2d at 768 n. 3 ("Isolated violations are not the persistent, often repeated constant violations that constitute custom and policy."); *Languirand v. Hayden,* 717 F.2d 220, 227–28 (5th Cir.1983), *cert. denied,* 467 U.S. 1215, 104 S.Ct. 2656, 81 L.Ed.2d 363 (1984) (section 1983 plaintiff asserting police misconduct must allege "pattern of similar incidents in which citizens were injured or endangered" by policy consistent misconduct or serious incompetence or misbehavior was general or widespread throughout police force). However, sufficiently numerous prior incidents of official misconduct may tend to prove a custom and accession to that custom by municipal policymakers. *See Nobby Lobby, Inc.,* 970 F.2d at 92–93 (city could be held liable for numerous seizures by municipal police of video and other equipment from adult video arcades over period of two years where police consulted with city attorney's office, which approved same, before commencing seizures and seizures continued even after city requested federal court to stay lawsuit filed by arcade operators to permit state courts to first address state statute relied upon by police for seizures); *Matthias,* 906 F.2d at 1054 (city liable for persistent, widespread and longstanding practice by police chief of failing to provide adequate notice to lawful owners of property lawfully seized by police of their right to reclaim property prior to disposition by police where responsibility for disposing of such property had been delegated by city to police chief).

The second circumstance, liability based upon the official actions of final policymakers, has been the subject of at least two Supreme Court decisions since *Monell.* In *City of Oklahoma v. Tuttle,* a plurality of the Supreme Court held proof of a single incident of unconstitutional activity is not sufficient to impose liability on the municipality, unless there is proof that it was caused by an existing, unconstitutional municipal policy, attributable to a final municipal policymaker. 471 U.S. 808, 823–24, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985). In *Pembaur v. City of Cincinnati,* the Supreme Court held a municipal liability may, under appropriate circumstances, be imposed for a single decision by final municipal policymakers. 475 U.S. 469, 480–81, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). One circumstance agreed upon by the Justices in *Pembaur* where such would be the case is that which occurs where a government decision maker possessing final authority with respect to an area of government responsibility orders or directly participates in the action which

causes the alleged violation of the plaintiff's rights. *Id.* at 481, 106 S.Ct. 1292. In *Board of Comm'rs v. Brown,* the Supreme Court held a county could not be held liable for a single, isolated, allegedly improper, hiring decision by the county sheriff absent proof the hiring decision rose to the level of deliberate indifference to a plain obvious risk that the person hired would commit the type of constitutional violation which actually resulted in the plaintiff's injury. 520 U.S. 397, 404–06, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997).

■ The Fifth Circuit applied the holding in *Brown* to deny relief to a minor school child sexually assaulted by a school district employee in the absence of proof the decision to hire the offending employee was deliberately indifferent or proof proper scrutiny of the employee's background would have revealed a "plainly obvious" consequence of hiring the person would be a violation of a third party's federally protected rights. *Doe v. Hillsboro Indep. Sch. Dist.,* 113 F.3d 1412, 1416 (5th Cir.1997). In this circuit, then, a single unconstitutional act by a local governmental entity's final policymaker may subject that governmental entity to liability under section 1983. *See Bennett v. Pippin,* 74 F.3d 578, 586 (5th Cir.), *cert. denied,* 519 U.S. 817, 117 S.Ct. 68, 136 L.Ed.2d 29 (1996). However, that act must reflect an intentional, deliberate, decision by a final policymaker and, where the act or omission of the final policymaker personally did not directly cause the violation of a constitutional right, only decisions of the final municipal policymaker which constitute a conscious disregard for a high risk of unconstitutional conduct by others can give rise to municipal liability. The Fifth Circuit has also held claims against municipalities based on a single instance of improper conduct by a municipal official such as "episodic claims," must be supported by a showing the official acted with deliberate indifference to the plaintiff's rights. *See Flores v. County of Hardeman,* 124 F.3d 736, 738 (5th Cir.

1997) (in an episodic act case, plaintiff must show officer whose act or omission is challenged acted with deliberate indifference); *Scott v. Moore,* 114 F.3d 51, 54 (5th Cir.1997) (en banc) (distinguishing between subjective episodic acts or omissions and objective municipal policies and practices).

■ Authority to make municipal policy may be granted directly by a legislative enactment or may be delegated by an official who possesses such authority, and whether an official has final policy-making authority is a question of state law. *See McMillian v. Monroe County,* 520 U.S. 781, 784–88, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997); *Pembaur,* 475 U.S. at 483, 106 S.Ct. 1292; Doe, 153 F.3d at 216–17. Identifying a final policy-maker requires examination of applicable state law regarding the legal authority possessed by local officials. *See McMillian,* 520 U.S. at 786–87, 117 S.Ct. 1734; *Doe,* 153 F.3d at 216; *Brady v. Fort Bend County,* 145 F.3d 691, 699–700 (5th Cir.1998), *cert. denied,* 525 U.S. 1105, 119 S.Ct. 873, 142 L.Ed.2d 774 (1999). Generally, final policymakers include those local officials who, by virtue of state law, hold nearly absolute sway over the particular tasks or areas of responsibility entrusted to them and are accountable to no one other than the voters for their conduct in those areas. *See Turner,* 915 F.2d at 136. Final policymakers are usually empowered by state law to "define objectives and choose the means of achieving them" without supervision by any other governmental official. *Colle,* 981 F.2d at 244; *see also Turner,* 915 F.2d at 136; *Rhode v. Denson,* 776 F.2d 107, 109 (5th Cir.1985), *cert. denied,* 476 U.S. 1170, 106 S.Ct. 2891, 90 L.Ed.2d 978 (1986). For example, under Texas law, county sheriffs are the final county policymakers in the area of law enforcement. *See Bennett,* 74 F.3d at 586; *Colle,* 981 F.2d at 244 & n. 35; *Turner,* 915 F.2d at 136; *Familias Unidas v. Briscoe,* 619 F.2d 391, 404 (5th Cir. 1980).

In addition to persons identifiable as final policymakers under state law, the actions of officials who exercise final policy-making authority as a result of a formal delegation of that authority from a local governmental entity's governing body can also provide a basis for holding that governmental entity liable under Section 1983. *See Pembaur*, 475 U.S. at 483, 106 S.Ct. 1292; *see, e.g., Doe*, 153 F.3d at 216 (local school district did not delegate final district policymaking authority over complaints of sexual misconduct by teachers against students to campus principals although district had not adopted formal policy addressing manner in which such complaints should be handled); *Matthias*, 906 F.2d at 1054 (city liable for illegal actions of city police chief in connection with disposition of seized private property where city had delegated responsibility for property to chief); *Crowder v. Sinyard*, 884 F.2d 804, 829 (5th Cir.1989) (jury's finding city had delegated its final policy-making authority in area of law enforcement to city police chief was supported by evidence and warranted imposing liability upon city), *cert. denied*, 496 U.S. 924, 110 S.Ct. 2617, 110 L.Ed.2d 638 (1990). Only the actions of, or policies established by, those local governmental officials who exercise independent, final, decision making authority can create a basis for holding a local governmental entity liable under Section 1983. *See Sanders v. English*, 950 F.2d 1152, 1159 n. 13 (5th Cir.1992) (city may be held liable for unconstitutional conduct of city officials only if city's policy or custom played a part in the violation); *Burns v. City of Galveston*, 905 F.2d 100, 102–03 (5th Cir.1990) (section 1983 liability for city can only be based on a deliberate choice to follow a course of action made by final policymakers); *Worsham v. City of Pasadena*, 881 F.2d 1336, 1340–41 (5th Cir.1989) (existence of council with authority to review and set aside city mayor's decision to terminate municipal employee, which it did, precluded finding mayor possessed final city policy-making authority over employee's termination and therefore also precluded finding of municipal liability resulting from mayor's subsequently vacated action).

Furthermore, where the act or omission of the final policymaker personally did not directly cause the violation of a constitutional right, only decisions of the final municipal policymaker which constitute a conscious disregard for a high risk of unconstitutional conduct by others can give rise to municipal liability. *See Brown*, 520 U.S. at 404–06, 117 S.Ct. 1382; *Doe*, 153 F.3d at 216–17.

> A municipality is liable under § 1983 "only where the municipality *itself* causes the constitutional violation at issue." The violation must be caused by a "municipal policy or custom" consisting of a " 'deliberate' or 'conscious' choice" "by city policymakers." This Court has stated that a municipal policy may be established by a persistent pattern of conduct as well as by a formal legal declaration.

*Richardson v. Oldham*, 12 F.3d 1373, 1381–82 (5th Cir.1994). Municipal liability under Section 1983 attaches only when the official responsible for establishing final policy with respect to the subject matter in question makes a deliberate choice to follow a course of action from among various alternatives. *See Brown*, 520 U.S. at 404–05, 117 S.Ct. 1382; *Pembaur*, 475 U.S. at 483–84, 106 S.Ct. 1292. Thus, mere negligence on the part of local governmental final policymakers does not give rise to governmental liability under Section 1983. *Collins v. City of Harker Heights*, 503 U.S. 115, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992), *aff'g* 916 F.2d 284, 286 (5th Cir. 1990); *Daniels v. Williams*, 474 U.S. 327, 331–34, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Davidson v. Cannon*, 474 U.S. 344, 347–48, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986); *Campbell v. City of San Antonio*, 43 F.3d 973, 977 (5th Cir.1995); *see also Doe*, 153 F.3d at 215–17 (school district's failure to adopt official policy addressing allegations of sexual assault by teachers on

students could not support section 1983 liability where failure was merely an unintentional negligent oversight).

A municipality may be held liable under section 1983 for failing to adopt a policy when that failure rises to the level of "deliberate indifference" to the need for such a policy. Under this test, a governmental entity can be held liable if in the light of the duties assigned to specific officers or employees, the need for such a policy is so obvious, and the absence of such a policy so likely to result in violations of constitutional rights, the governmental entity's policymakers can reasonably be said to have been "deliberately indifferent" to the need for the policy. *City of Canton v. Harris,* 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); *Colle,* 981 F.2d at 245–46; *Rhyne v. Henderson County,* 973 F.2d 386, 392 (5th Cir.1992); *Benavides v. County of Wilson,* 955 F.2d 968, 972–73 (5th Cir.), *cert. denied,* 506 U.S. 824, 113 S.Ct. 79, 121 L.Ed.2d 43 (1992). Mere negligence by policymakers in the face of unconstitutional behavior by municipal employees is insufficient to establish municipal liability under section 1983. *See Collins,* 916 F.2d at 286; *Doe,* 153 F.3d at 217. Furthermore, the municipality must be the moving force behind the resulting constitutional violation. *Brown,* 520 U.S. at 415, 117 S.Ct. 1382; *Doe,* 153 F.3d at 215–16.

## DISCUSSION

Based upon their experience with Tony's attempt to flee arrest, plaintiffs allege Frio County failed properly to train and discipline its officers and this policy of failing to train and discipline its officers was the proximate cause of plaintiffs' alleged 42 U.S.C. § 1983 constitutional deprivation. To succeed on their failure to train claim, plaintiffs must show the training of the municipality's policymaker was inadequate, the municipality's policymaker was deliberately indifferent in adopting the training policy and the inadequate training policy directly caused plaintiffs' injuries. *Baker v. Putnal,* 75 F.3d 190, 200 (5th Cir.1996). The Fifth Circuit, however, has held if a law enforcement department meets the state standards for the training of its law enforcement officers, the plaintiffs cannot sustain a failure to train cause of action under 42 U.S.C. § 1983. *See Conner v. Travis County,* 209 F.3d 794, 798 (5th Cir.2000); *Benavides v. County of Wilson,* 955 F.2d 968, 973 (5th Cir.), *cert. denied,* 506 U.S. 824, 113 S.Ct. 79, 121 L.Ed.2d 43 (1992); *Huong v. City of Port Arthur,* 961 F.Supp. 1003, 1007 (E.D.Tex.1997). In response to plaintiff's reply to its motion for summary judgment, Frio County produced documentation from the Texas Commission on Law Enforcement Standards and Education ("TCLEOSE") showing the ten deputies employed by Frio County meet and exceed the training requirements set forth by TCLEOSE.

Moreover, plaintiffs' argument is similar to those cases in which the Court is presented with allegations of a single incident of failure to train without a resulting reprimand. *Grandstaff v. City of Borger,* 767 F.2d 161 (5th Cir.1985), *cert. denied,* 480 U.S. 916, 107 S.Ct. 1369, 94 L.Ed.2d 686 (1987), is instructive. The Court recognized there was no evidence of prior misconduct within the police department or "of prior knowledge and state of mind of the police chief." *Id.* at 171. The Court further recognized isolated cases of police misconduct would not be adequate to prove knowledge by or acquiescence in that conduct by the policymaker. The difficulty in proving prior instances was acknowledged as follows:

An injured plaintiff is not likely to document proof of a policy or disposition, either of the policymaker or throughout the police force, that disregards human life and safety. The disposition must be inferred circumstantially from conduct of the officers and of the policymaker. Prior incidents of abusive police conduct tend to prove a pattern or custom and the accession to that custom by the poli-

cymaker. But the plaintiff may encounter difficulties in making that proof, because of the lack of available credible witnesses and the avenues for dispute and distraction over the actual facts of each specific incident. No incidents prior to the August 11, 1981 were proved here.

*Id.* What the evidence did show was repeated acts of abuse by several officers and in several episodes on the night in question. The Court found this evidence tended to prove a "disposition to disregard human life and safety so prevalent as to be police policy or custom." *Id.*

Also reviewed was the conduct of the policymaker after the incident:

> Following this incompetent and catastrophic performance, there were no reprimands, no discharges, and no admissions of error. The officers testified at the trial that no changes had been made in their policies. If that episode of such dangerous recklessness obtained so little attention and action by the City policymaker, the jury was entitled to conclude that it was accepted as the way things are done and have been done in the City of Borger. If prior policy had been violated, we would expect to see a different reaction. If what the officers did and failed to do on August 11, 1981 was not acceptable to the police chief, changes would have been made.

*Id.* Based on the foregoing, the Court found the jury was entitled to infer the conduct on the night of the incident demonstrated the policy of the police department as approved by the policymaker both before and after the incident. *Id.* at 172.

The *Grandstaff* decision, however, has been met with some disapproval and/or factual limitations. In *Coon v. Ledbetter*, 780 F.2d 1158, 1161–62 (5th Cir.1986), the Court declined to hold the County liable even though the sheriff ratified the deputies' conduct after a shootout. Instead, it noted the *Grandstaff* judgment against the city was affirmed on a "highly peculiar set of facts" and that decision could "be applied only to equally extreme factual situations." *Id.* at 1161. Based in part on the *Coon* rationale, another court declined to find the existence of a custom based on the misconduct of one officer, concerted inaction by witnessing officers and the failure of the chief to issue reprimands for the inaction of these officers. *Cawthon v. City of Greenville*, 745 F.Supp. 377, 383 (N.D.Miss.1990). Acknowledging the *Grandstaff* decision provided support for plaintiff's position, the Court warned:

> The inferences permitted by the *Grandstaff* opinion approach dangerously close to dissolving the direct liability rationale of *Monell* and imposing respondeat superior liability upon a municipality. Precisely because of this danger, the Fifth Circuit has expressly limited *Grandstaff* to "equally extreme factual situations." *Coon v. Ledbetter*, 780 F.2d 1158, 1161 (5th Cir.1986).

*Id.* at 384.

The rationale of *Grandstaff* has not been rejected entirely. In *Palmer v. City of San Antonio*, 810 F.2d 514, 516 (5th Cir. 1987), the Court stated if officers know at the time of their action the use of excessive force in arresting persons will be approved by the policymakers, then the causation requirement is met. Unfortunately for the plaintiff in *Palmer*, he failed to state facts supporting his claim the city "authorized and approved the practice of its police officers using excessive force when making arrests or that such a well settled practice of doing so existed." *Id.*[1] In affirming the District Court's order of dismissal, the Fifth Circuit reiterated "the assertion of a single incident is not suffi-

---

1. The Court is aware of the abrogation of the Fifth Circuit pleading standard which required section 1983 complaints against municipal corporations to "state with particularity the basis for the claim," including facts showing "why the defendant cannot successfully maintain the defense of immunity." *Blanton v. City of Indianapolis*, 830 F.Supp. 1198, 1203 (S.D.Ind.1993).

cient to show that a policy or custom exists on the part of a municipality." *Id.* at 516–17. In addition, the Fifth Circuit has not been persuaded by the argument an unconstitutional custom or policy can be inferred from a failure to discipline. *Fraire,* 957 F.2d at 1278. Relying on a previous decision, the Court found "a city's custom or policy authorizing or encouraging police misconduct cannot be inferred from a municipality's isolated decision not to discipline a single officer for a single incident of illegality." *Id.* at 1278–79.

Here, plaintiffs have presented no summary judgment evidence they sustained a deprivation of their constitutional rights as a result of an official policy, practice or custom of Frio County. There is no evidence the Attorney General of the State of Texas or another final policymaker such as the Sheriff was directly involved in the minor Gonzales' arrest. Likewise, the record is devoid of evidence there was a county policy which allowed deputies to use excessive force when attempting to effectuate the arrest of a fleeing juvenile suspect. There is no evidence of similar incidents. The record is devoid of an indication it was routine for other deputies, or even the deputy accused of wrongdoing in this case, to engage in the conduct of which plaintiffs complain. The summary judgment record provides no testimony from a county official regarding the procedures followed, or lack thereof, regarding a deputy's duty when attempting to regain custody of an escaped minor pretrial detainee.

Nor has plaintiff presented a genuine issue of material fact concerning whether the County's adoption of, or failure to adopt, the alleged policy at issue amounted to deliberate indifference. There is no showing the County had actual knowledge or should have known its procedures, or lack thereof, in training officers created a substantial risk of harm to juvenile pretrial detainees attempting to escape custody. There is no showing of a conscious or deliberate choice on the part of final poli-

cymakers to condone a general and widespread practice in Frio County of failing to instruct law enforcement officers not to tackle minor suspects in order to effectuate their arrest upon fleeing from a law enforcement vehicle. Rather, plaintiffs have at most alleged a single act of negligence on the part of a nonpolicy-making employee.

Additionally, plaintiffs have raised no questions concerning a custom or policy based on the events surrounding the incident as in *Grandstaff.* There is no evidence showing an effort on the part of Frio County to avoid fault, conceal facts, or ratify and protect the alleged wrongful conduct of Officer Westbrook. Plaintiffs have failed to show the County authorized and approved the practice of its deputies' alleged use of excessive force. In the absence of summary judgment evidence setting forth specific facts of a custom or policy, plaintiffs have presented the Court with a single, episodic incident of an alleged violation of their constitutional rights for which the County cannot be held accountable.

 Plaintiffs contend they cannot meet their summary judgment burden of showing a custom or policy because the personnel files of the sheriff's office are in the possession of the FBI. As the County notes, plaintiffs had the opportunity to take the depositions of all ten deputies of the Frio County's Sheriff's Department and Sheriff Burris, yet chose only to depose Sheriff Burris and Deputy Westbrook. Additionally, notwithstanding their argument the personnel files were in the possession of the FBI, alternative methods of investigation were available to plaintiffs as to Deputy Westbrook and perhaps other officers. Plaintiffs' counsel questioned Sheriff Burris as to ways he could investigate prisoners who had allegedly been abused by Deputy Westbrook as follows:

Q: [W]hat would be the best way for me to find out the names of the people that Mr. Westbrook had ar-

rested during his tenure as Frio County Deputy?

A: You can come down and look through the booking files at the jail.

Q: And they would show everybody he's arrested?

A: Uh-huh.

Q: Did/and they identify people by name and address and phone number and offense, if they've got one?

A: Yes.

Moreover, the deposition testimony which is available does not show the existence of a custom or policy of inadequate training. During the deposition of Sheriff Burris, plaintiffs' counsel questioned the Sheriff regarding the use of excessive force complaints against Deputy Westbrook as follows:

Q: [A]nd then you say that there are no complaints alleging that use of force have been made against Defendant Chris Westbrook.

A: Yes.

Q: That's in a nutshell. But you don't know about verbal complaints.

A: No.

Concerning the ten deputies of Frio County, plaintiffs' counsel asked the following questions of Sheriff Burris:

Q: [H]ave you, during your tenure as Sheriff of Frio County, ever had any internal investigations conducted concerning alleged police misconduct?

A: [I]f I have an investigation conducted and it involves anything criminal, I have the [Texas] Rangers take care of it. . . .

Q: [D]uring the five/seven years that you have been Sheriff of Frio County, you have never had any internal investigation conducted concerning non-criminal police misconduct by one of your officers.

A: No, sir. . . . We have had to investigate and inquire about several

things [which] pertain to deputies. And its done through my office/my chief or I.

Q: Are you, are you talking about the alleged abuse of citizens?

A: No. We have not had any abuse.

The questioning concerning the ten deputies of Frio County and alleged excessive use of force continued by plaintiffs' counsel as follows:

Q: [S]o, it is your testimony under oath as the Sheriff of Frio County that in seven years that you have been sheriff, you cannot remember a single written complaint of any kind of misconduct against any officer.

A: No, sir. We don't get off, sir, beating people, and we don't get off, sir, hurting people. . . . If you are going to abuse somebody and you are going to mess with them, you are going to answer to me and I am going to fire you.

Q: [W]ell, what makes you sure of that?

A: They're not that kind of people. We live in that community, sir. And we have to look at those people everyday, just like I am looking at you right now. It's not San Antonio. It's not Nacogdoches, it's not Dallas. You're going to run into those same people everyday, every week, in the grocery stores, the Wal–Mart. And you can't go through life down there with that kind of reputation.

In addition to this testimony, Frio County and Deputy Westbrook's Response to Request for Production propounded by plaintiff Request No. 5 specifically addresses plaintiffs' inquiry regarding all complaints alleging the use of excessive force made against any other Frio County law enforcement officer in the past ten years. Defendants responded no excessive force complaints have been made against a Frio County law enforcement officer other than the incident made the basis of this lawsuit.

The Court concludes, despite adequate discovery mechanisms in place to investigate and identify abuse, and even viewing the evidence in a light favorable to plaintiffs as the Court must in this summary judgment proceeding, plaintiffs have not produced a custom or policy of the sheriff's department concerning the abuse of pretrial detainees and further shown this custom or policy was the proximate cause of their alleged constitutional deprivation. In fact, plaintiffs' counsel conceded Sheriff Burris has a good reputation as the Sheriff of Frio County for having a well-trained and supervised force:

Q: Okay, and Padilla, who is in a lot better position to know than me, says that by reputation you're a good guy, which is the reason at this day and time you can still have an Anglo Sheriff in South Texas.

IT IS THEREFORE ORDERED that defendant Frio County's Motion for Summary Judgment (docket no. 30) is GRANTED and plaintiffs' claims against defendant Frio County are DISMISSED. Plaintiffs' claims against defendant Chris Westbrook in his individual capacity remain pending for disposition. Motions pending as to defendant Frio County, if any, are denied.

It is so ORDERED.