**Vern HALLMARK, Appellant,**

v.

**CITY OF FREDERICKSBURG, Lt. Steve Wetz, Sgt. Elgin Durst, and Officer Felix Castaneda, Appellees.**

No. 04–01–00595–CV.

Court of Appeals of Texas, San Antonio.

Oct. 30, 2002.

Rehearing Overruled Nov. 21, 2002.

---

Paula K. Williamson, Harry J. Skeins, Jr., Skeins & Williamson, P.C., Fredericksburg, for Appellant.

Charles S. Frigerio, Hector X. Saenz, Law Offices of Charles S. Frigerio, P.C., San Antonio, for Appellee.

Sitting: ALMA L. LÓPEZ, Justice, SARAH B. DUNCAN, Justice, KAREN ANGELINI, Justice.

Opinion by: KAREN ANGELINI, Justice.

Vern Hallmark appeals the trial court's grant of summary judgment in favor of the City of Fredericksburg ("City"), Lt. Steve Wetz, Sgt. Elgin Durst, and Officer Felix Castaneda. According to Hallmark, the trial court erred in dismissing his 42 U.S.C. § 1983 claim and his tort claims for trespass, assault and battery, and intentional infliction of emotional distress. We affirm in part, reverse and remand in part, and reverse and render in part.

## BACKGROUND

In reviewing the grant of a motion for summary judgment, we look at the facts in the light most favorable to the nonmovant. In the light most favorable to Hallmark, the facts surrounding the incident in question are as follows: In preparation for a softball game, Lt. Steve Wetz, Sgt. Elgin Durst, and Officer Felix Castaneda, along with several other law enforcement officers, were practicing hitting softballs. As they were practicing, they hit several softballs into Hallmark's adjacent R.V. park; one ball, in particular, hit a horse trailer. The owner of the trailer complained to Hallmark, who, in response, walked onto the field and asked the officers to cease hitting softballs. According to Hallmark, the officers refused and informed him (1) that Hallmark "had better return to the R.V. park" or he "would have 'big trouble;'" (2) that they were "financially able to fix any property they might damage;" and (3) that as police officers on city property, they "could do as they wanted."

Hallmark returned to his R.V. park and called the police station to complain, but was unable to speak with anyone. He was, however, able to make an appointment for the next morning at 8:00 a.m. with Assistant Chief Oestreich concerning the officers' activities. That same evening, an officer hit another softball onto Hallmark's property. After Hallmark picked up the softball, Lt. Wetz walked up to the property line and asked Hallmark to return the softball. Hallmark replied that he would return the softball to Assistant Chief Oestreich the following morning. Lt. Wetz threatened to arrest Hallmark if he did not return the softball immediately. In response to this demand, Hallmark walked away, but was blocked by Lt. Wetz and two other officers, Castaneda and Durst. Holding the softball in both of his hands behind his back, Hallmark was encircled by the three officers and grabbed from behind. Hallmark's hands were forcibly pulled from the softball by one of the officers, causing Hallmark's finger to break. After forcibly taking the softball, the officers left Hallmark's property without saying anything further.

Meeting with Assistant Chief Oestreich the following morning, Hallmark demanded the names of the three officers who assaulted him. Oestreich replied, "That would never happen." In response, Hallmark sued the City for violating his constitutional rights under section 1983 and sued Lt. Steve Wetz, Sgt. Elgin Durst, and Officer Felix Castaneda for trespass, assault and battery, intentional infliction of emotional distress, and for violating his constitutional rights under section 1983.

## STANDARD OF REVIEW

A party moving for summary judgment must show that no genuine issue of material fact exists and that the party is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c); *Randall's Food Mkts., Inc. v. Johnson,* 891 S.W.2d 640, 644 (Tex. 1995); *Nixon v. Mr. Property Mgmt. Co.,*

690 S.W.2d 546, 548 (Tex.1985). In reviewing the grant of a summary judgment, we must indulge every reasonable inference and resolve any doubts in favor of the nonmovant, assuming all evidence favorable to the nonmovant as true. *Johnson,* 891 S.W.2d at 644; *Nixon,* 690 S.W.2d at 548–49.

A defendant is entitled to summary judgment if the evidence disproves as a matter of law at least one element of the plaintiff's cause of action. *Lear Siegler, Inc. v. Perez,* 819 S.W.2d 470, 471 (Tex. 1991). Once the movant has established a right to summary judgment, the burden shifts to the nonmovant to present evidence that would raise a genuine issue of material fact. *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979).

Section 1983—City of Fredericksburg

■■■ In *Monell v. Department of Social Services,* 436 U.S. 658, 692, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court held that a governmental entity can be found liable under section 1983 only if the entity itself causes the constitutional violation at issue. Because respondeat superior or vicarious liability is not a basis for recovery under section 1983, a municipality may not be held liable under section 1983 solely because it employs a tortfeasor. *Gonzales v. Westbrook,* 118 F.Supp.2d 728, 733 (W.D.Tex.2000). It is only when the execution of the government's policy or custom inflicts the injury that the governmental entity may be held liable. *Id.*

■■■ A municipality can be liable for the acts of its officials under section 1983 in two circumstances: first, a municipality's final policymakers are held effectively to have made policy or condoned the creation of a custom by knowingly ratifying the unconstitutional or illegal actions of subordinate officers or employees; and, second, the municipality can be held liable for the illegal or unconstitutional actions of its final policymakers themselves as they engage in the setting of goals and the determination of how those goals will be achieved. *Gonzales,* 118 F.Supp.2d at 734; *see Turner v. Upton County,* 915 F.2d 133, 136 (5th Cir.1990). Hallmark alleges the former, rather than the latter. As to the former, isolated instances of official misconduct by a governmental entity's nonpolicy-making employees are inadequate to prove knowledge and acquiescence by the entity's policymakers. *Gonzales,* 118 F.Supp.2d at 734. However, sufficiently numerous prior incidents of official misconduct may tend to prove a custom and accession to that custom by municipal policymakers. *Id.*

As evidence that his constitutional rights were violated as a result of a custom or policy of the City, Hallmark points to the deposition testimony of Chief of Police Dennis Rhoten and Assistant Chief Paul Oestreich. Chief Rhoten testified that the actions of Wetz, Durst, and Castaneda were actions of reasonable police officers and that their actions did not violate any of the City's policies and procedures:

Q: Okay. Now the generally [sic] rules of conduct—and I know where you're coming from on that. On the general rules of conduct then, the— if they're complying with state law, penal code, then they would be— And these policies are procedures certainly are not in conflict with those?

A: No.

Q: Not in any way.

A: No.

Q: So if—their conduct is in conformance, you're saying with state law and the policies and procedures?

A: Yes.

Hallmark emphasizes similar testimony given by Assistant Chief Oestreich:

Q: Do you think Durst, Wetz, or Castaneda did anything wrong when they crossed over the fence and took the ball away from Mr. Hallmark?

A: No.

Q: *Do you think they violated any policy, procedure, or anything?*

A: *No.*

Q: Do you think it's proper—Let me ask you this: If it has been private property, as opposed to your contention it was public property, would they have been doing anything wrong?

A: Going to retrieve the ball?

Q: Yes, sir.

A: No.

Q: What is the policy of the city, coming up to private or public property to retrieve the ball, what can an officer do?

A: *I don't think there's a policy in the city that addresses retrieving balls from public or private property.*

(emphasis added). While Rhoten and Oestreich testified that the conduct of the three officers did not violate a policy or custom, they did not, however, testify about an official policy or custom that deprived Hallmark of his constitutional rights; the record is devoid of evidence of any City policy allowing officers to use excessive force. *See Gonzales,* 118 F.Supp.2d at 739. Moreover, there is no evidence of similar incidents. *See id.* Nor is there any indication in the record that it was routine for other officers, or even the three officers accused of wrongdoing here, to engage in the conduct of which Hallmark complains. *See id.* Hallmark, therefore, has presented no summary judgment evidence that he sustained a deprivation of his constitutional rights as a result of an official policy, practice, or custom of the City. The trial court correctly granted summary judgment on Hallmark's section 1983 claim against the City.

## CLAIMS AGAINST OFFICERS IN THEIR OFFICIAL CAPACITY.

It is well-settled that a suit against a public official in his "official capacity" is, in effect, a suit against the municipality or governmental entity the official represents. *See Hafer v. Melo,* 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991); *Kentucky v. Graham,* 473 U.S. 159, 165–66, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *Esteves v. Brock,* 106 F.3d 674, 677 (5th Cir.1997). Accordingly, Hallmark's claims against Defendants Wetz, Durst, and Castaneda in their official capacities are actually claims asserted against the City, a named-defendant. Consequently, such claims are duplicative. *Kentucky,* 473 U.S. at 167 n. 14, 105 S.Ct. 3099. Thus, as we have upheld the granting of the summary judgment in favor of the City, the summary judgment in favor of Wetz, Durst, and Castaneda in their official capacities should also be upheld.

## CLAIMS AGAINST OFFICERS IN THEIR INDIVIDUAL CAPACITIES

### A. Section 1983 Claim

■ With respect to Hallmark's section 1983 claim against Lt. Wetz, Sgt. Durst, and Officer Castaneda in their individual capacities, we must decide whether the officers are entitled to qualified immunity. In so deciding, we must first determine whether the plaintiff has alleged the violation of a clearly established constitutional right. *Williams v. Bramer,* 180 F.3d 699, 702 (5th Cir.), *clarified on other grounds,* 186 F.3d 633 (5th Cir.1999); *Lampkin v. City of Nacogdoches,* 7 F.3d 430, 434 (5th

Cir.1993). Hallmark has fulfilled this requirement by alleging that Officers Wetz, Durst, and Castaneda violated his Fourth Amendment rights by subjecting him to excessive force. *See Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).

■■■ We next determine whether the defendant's conduct was objectively reasonable in light of the "clearly established" law at the time of the alleged violation. *Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *Williams,* 180 F.3d at 702; *Spann v. Rainey,* 987 F.2d 1110, 1114 (5th Cir.1993). In determining whether qualified immunity applies in the context of excessive force, we look to whether the plaintiff has suffered (1) an injury (2) which resulted directly and only from the use of force that was clearly excessive to the need, and (3) the force used was objectively unreasonable. *Williams,* 180 F.3d at 703. Objective unreasonableness is a matter of law for the courts to decide. *Goodson v. City of Corpus Christi,* 202 F.3d 730, 736 (5th Cir.2000). The touchstone of this inquiry is whether a reasonable person would have believed that his conduct conformed to the constitutional standard in light of the information available to him and the clearly established law. *Id.* Therefore, even law enforcement officials who reasonably but mistakenly commit a constitutional violation are entitled to immunity. *Id.*

Here, it is undisputed that Officers Wetz, Durst, and Castaneda approached Hallmark and surrounded him. It is also undisputed that Officer Wetz grabbed the softball from Hallmark's hands, thereby breaking Hallmark's finger.[1] When asked to return the softball, Hallmark responded that he would return it to Assistant Chief Oestreich the next morning. Wetz, Durst, and Castaneda then walked onto Hallmark's property, surrounded him, and physically removed the softball from his hands, breaking his finger. Under these facts, we hold that, in the light most favorable to Hallmark, the summary judgment evidence shows that the force used by Officers Wetz, Durst, and Castaneda was objectively unreasonable in light of the circumstances existing at the time of the incident. Hallmark's section 1983 claim against Officers Wetz, Durst, and Castaneda should not have been dismissed. We sustain this issue.

## B. Intentional Torts

■■■ Appellees bring a cross-issue, arguing that the trial court should have granted their motion for summary judgment with respect to Hallmark's state tort claims.[2] This court previously affirmed the trial court's summary judgment dismissing Hallmark's state tort claims against the City. As such, according to appellees, that previous judgment for the City entitles Officers Wetz, Durst, and

---

1. Appellees also argue that the actions of Officers Wetz, Durst, and Castaneda did not constitute an intentional act of depriving Hallmark a right secured to him by the Constitution. We disagree that the Officers' actions were anything but intentional. The undisputed summary judgment evidence shows that the Officers intended to forcibly retrieve their softball from Hallmark at the time of the incident.

2. We have jurisdiction over this denial of appellees' motion for summary judgment pursu-

ant to section 51.014(a)(5) of the Texas Civil Practice & Remedies Code:

> A person may appeal from an interlocutory order of a district court, county court at law, or county court that:
> (5) denies a motion for summary judgment that is based on an assertion of immunity by an individual who is an officer or employee of the state or a political subdivision of the state . . .

Tex. Civ. Prac. & Rem.Code Ann. § 51.014(a)(5) (Vernon Supp.2002).

Castaneda to summary judgment under section 101.106 of the Texas Civil Practice and Remedies Code.

Section 101.106, "Employees not liable after settlement or judgment," provides,

> A judgment in an action in a settlement of a claim under this chapter bars any action involving the same subject matter by the claimant against the employee of the governmental unit whose act or omission gave rise to the claim.

TEX. CIV. PRAC. & REM.CODE ANN. § 101.106 (Vernon 1997). This provision of the Texas Tort Claims Act (TTCA) is an immunity statute and precludes claims against a governmental employee involving the same action, transaction, or occurrence without regard to whether the action against the employee is based on the same cause of action; the action need only involve the same subject matter as the action brought against the governmental entity. *Dallas County Mental Health v. Bossley*, 968 S.W.2d 339, 343–44 (Tex.1998); *Newman v. Obersteller*, 960 S.W.2d 621, 622 (Tex. 1997); *Beasley v. Clark*, 986 S.W.2d 256, 257 (Tex.App.-Houston [1st Dist.] 1998, no pet.); *White v. Annis*, 864 S.W.2d 127, 131 (Tex.App.-Dallas 1993, writ denied). Thus, whether the plaintiff's claim against the governmental unit falls under the TTCA is relevant, but whether the plaintiff's claim against the employee falls under the TTCA is not. *See White*, 864 S.W.2d at 130; *see also Brand v. Savage*, 920 S.W.2d 672, 674–75 (Tex.App.-Houston [1st Dist.] 1995, no writ). The provision even applies to situations in which the employee is not acting within the scope of his employment or in good faith. *See Owens v. Medrano*, 915 S.W.2d 214, 216 (Tex.App.-Corpus Christi 1996, writ denied).

In essence, the purpose of section 101.106 is to protect government employees from individual liability for acts or omissions where a claim based upon the same facts is made against their employers under the TTCA. *Gonzalez v. El Paso Hosp. Dist.*, 940 S.W.2d 793, 795 (Tex. App.-El Paso 1997, no writ). Although some effects of this statute may be harsh, *see Brand*, 920 S.W.2d at 675, the Texas Supreme Court nevertheless noted in *Thomas v. Oldham*, 895 S.W.2d 352, 357–58 (Tex.1995), that the plaintiff has the option of seeking relief only against the employee, and not the governmental entity:

> Although a plaintiff who pursues the statutory remedy against the government may lose his or her common law remedy against the employee, the plaintiff is not required to follow this course. He or she may still opt to pursue the full common law remedy against the responsible employee, foregoing or postponing any attempt to recover from the government.

Further, section 101.106 does not bar state and federal constitutional claims. *See Brand*, 920 S.W.2d at 675.

Hallmark's state intentional tort claims against Officers Wetz, Durst, and Castaneda clearly arise out of the same subject matter as its claims against the City. According to Hallmark, however, his claims do not fall within this section because the Texas Tort Claims Act excludes intentional tort claims. Recently, however, we held that intentional tort claims do fall under section 101.106. *Ling Yin Liu v. City of San Antonio*, 88 S.W.3d 737 (Tex.App.-San Antonio, pet. filed). As such, section 101.106 bars Hallmark's state tort claims against Officers Wetz, Durst, and Castaneda. This cross-issue is sustained.

### CONCLUSION

There being no summary judgment evidence that Hallmark sustained a depriva-

tion of his constitutional rights as a result of an official policy, practice, or custom of the City, we affirm the trial court's judgment with respect to Hallmark's section 1983 claim against the City. Because we have upheld the judgment in favor of the City, we also affirm the trial court's judgment in favor of Officers Wetz, Durst, and Castaneda in their official capacities. But, with respect to Hallmark's section 1983 claim against Officers Wetz, Durst, and Castaneda in their individual capacities, we reverse the trial court's judgment and remand this cause to the trial court for further proceedings consistent with this opinion. Finally, because section 101.106 bars Hallmark's tort claims against Officers Wetz, Durst, and Castaneda, we reverse the trial court's judgment and render judgment in favor of Officers Wetz, Durst, and Castaneda.