COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

)
ELSA GOMEZ and JOSE RAMIRO GOMEZ,  )
Individually and on behalf of JOSE GOMEZ     ) 
and SERGIO GOMEZ, minor children,           )                  No. 08-03-00224-CV
)
                                    Appellants,                       )                             Appeal from
)
v.                                                                          )                  205th District Court
)
HOUSING AUTHORITY OF                         )                  of El Paso County, Texas
THE CITY OF EL PASO, TEXAS,                    )
                                                                             ) (TC# 2000-1111)
                                    Appellee.                          )

O P I N I O N

            We consider today the liability of the Housing Authority (HACEP) for federal civil rights
violations arising from the sexual molestation of two children at a housing project. The trial court
granted HACEP’s plea to the jurisdiction. Appellants Elsa Gomez and Jose Ramiro Gomez,
individually and on behalf of their children, bring forward one issue on appeal. Finding ourselves
in agreement with the court below, we affirm.
FACTUAL AND PROCEDURAL SUMMARY
            The following allegations are taken from Appellants’ pleadings and evidence they submitted
in response to the plea to the jurisdiction. On October 29, 1999, the Gomez family was living at the
Machuca Housing Project in El Paso, Texas. HACEP had a policy prohibiting criminals from
residing on housing authority premises in an effort to provide security and safety for the residents. 
Yet HACEP permitted Enrique Martinez to occupy the premises and, tragically, he molested the
Gomez children at the Project playground. Appellants sued HACEP under the Texas Tort Claims
Act. By their first amended petition, they added claims under the Civil Rights Act of 1871, 42
U.S.C. § 1983. Lupe Armstrong, the apartment manager at the Project, was named as a defendant
in the second amended petition. 
            Appellants alleged that HACEP and its employees, acting under color of law and in the
course and scope of their employment, deprived them of rights secured by the Constitution and laws
of the United States and the State of Texas. Specifically, Appellants contended that HACEP’s
supervisory personnel demonstrated deliberate indifference to the children’s constitutional rights to
bodily integrity by permitting a convicted child molester to occupy the premises. They also pled that
HACEP’s screening procedures were inadequate because they failed to remove occupants with
known criminal histories and failed to supervise convicted criminals. 
            After filing special exceptions and an answer, HACEP filed its first amended plea to the
jurisdiction in which it argued that a claim under section 1983 requires proof that a policy maker
implemented an official policy which resulted in a violation of constitutional rights. It further argued
that the lawsuit could not be predicated on a theory of respondeat superior.


 Consequently, HACEP
contended that the trial court lacked jurisdiction.
            The evidence before the court included an affidavit from Enrique Martinez’s wife, who was
a resident at the Project. In March 1999, Mrs. Martinez asked Armstrong to add her husband to the
lease. She was told that her husband could live in the unit for fifteen days pending an investigation. 
After the fifteen days had passed, Armstrong told Mrs. Martinez that her husband could not be added
to the lease because of his criminal record, but he could visit provided he did not spend the night. 
            The trial court also considered Armstrong’s deposition. As part of her job, Armstrong was
expected to observe and enforce HACEP’s rules and regulations. She would report violations to her
supervisor, Sam Silvas. Armstrong was not responsible for completing a criminal background check
on every resident, as it was the responsibility of the eligibility department to do so. The Project had
at least fifty children as residents and a playground was provided for them. There had been no
complaints of child molestation while Armstrong was manager. She explained that when residents
had visitors, they were to notify the office. However, HACEP did not screen the criminal records
of visitors. The lease agreement provided that visitors could stay for fifteen days. Armstrong had
never seen a situation where a non-tenant spouse stayed for more than two weeks. Armstrong
admitted that Mrs. Martinez had come into the office requesting that her husband be added to the
lease and that Mrs. Martinez was told her husband could visit for fifteen days until his background
check was completed. She explained that if Martinez had a criminal history, he would not be able
to reside at the complex. Martinez’s criminal history was requested on March 23 and HACEP
learned that he was ineligible on April 12. Armstrong was notified of his ineligibility, but not the
reason why he was ineligible. Armstrong then notified Mrs. Martinez that her husband could not
be added to the lease. Although HACEP rules permitted it, she denied saying that Martinez could
visit and Mrs. Martinez never asked that he be allowed to do so. Armstrong only saw Martinez on
the property one time and she told him he was prohibited from being there due to a restraining order
his wife had obtained. Armstrong never saw him on the premises again. In October 1999, Martinez
molested several children at the Project. Armstrong learned about it on the evening news. 
PLEA TO THE JURISDICTION
            In their sole point of error, Appellants contend they properly pled a cause of action under
section 1983 for which immunity was unavailable.
Standard of Review
            A plea to the jurisdiction is a dilatory plea by which a party contests the trial court’s authority
to determine the subject matter of the cause of action. City of Saginaw v. Carter, 996 S.W.2d 1, 2
(Tex.App.--Fort Worth 1999, pet.dism’d w.o.j.); State v. Benavides, 772 S.W.2d 271, 273
(Tex.App.--Corpus Christi 1989, writ denied). The plaintiff has the burden to allege facts that
affirmatively demonstrate that the trial court has subject matter jurisdiction. Texas Ass’n of Bus. v.
Texas Air Control Bd., 852 S.W.2d 440, 446 (Tex. 1993); City of Saginaw, 996 S.W.2d at 2. Subject
matter jurisdiction is a legal question which we review de novo. City of Saginaw, 996 S.W.2d at 2;
Texas Dept. of Health v. Doe, 994 S.W.2d 890, 892 (Tex.App.--Austin 1999, pet. dism’d by agr.). 
We look solely to the allegations in the petition and accept them as true. See City of Saginaw, 996
S.W.2d at 2-3. We do not examine the merits of the case. See City of Saginaw, 996 S.W.2d at 3. 
If the petition does not allege jurisdictional facts, the plaintiff’s suit is subject to dismissal only when
it is impossible to amend the pleadings to confer jurisdiction. City of Saginaw, 996 S.W.2d at 3; see
Texas Ass’n of Bus., 852 S.W.2d at 446; Liberty Mut. Ins. Co. v. Sharp, 874 S.W.2d 736, 739
(Tex.App.--Austin 1994, writ denied).
Sovereign Immunity
            Sovereign immunity derives from the principle that the sovereign may not be sued in its
courts without its consent. Texas Workers’ Comp. Comm’n v. Garcia, 862 S.W.2d 61, 72
(Tex.App.--San Antonio 1993), rev’d on other grounds, 893 S.W.2d 504 (Tex. 1995). Unless
waived, sovereign immunity protects the State from lawsuits for damages. General Services
Comm’n v. Little-Tex Insulation Co., Inc., 39 S.W.3d 591, 594 (Tex. 2001). Sovereign immunity
encompasses two principles: immunity from suit and immunity from liability. Texas Natural
Resource Conservation Comm’n v. IT-Davy, 74 S.W.3d 849, 853 (Tex. 2002). Immunity from suit
bars a suit against the State unless immunity is waived by constitutional provision or legislative
enactment. Wichita Falls State Hosp. v. Taylor, 106 S.W.3d 692, 695 (Tex. 2003). Absent consent,
the State retains immunity from suit even if its liability is undisputed. Federal Sign v. Texas
Southern University, 951 S.W.2d 401, 409 (Tex. 1997). A suit against a state agency is considered
to be a suit against the State. Lowe v. Texas Tech University, 540 S.W.2d 297, 298 (Tex. 1976). 
Similarly, a suit against state officials in their official capacities is equivalent to a suit against the
State. Pickell v. Brooks, 846 S.W.2d 421, 425 (Tex.App.--Austin 1992, writ denied). Consequently,
sovereign immunity protects agencies that are derived from the state constitution and laws as well
as state officials sued in their official capacities. Lowe, 540 S.W.2d at 298; see Pickell, 846 S.W.2d
at 425. 
Cause of Action Under Section 1983
Statutory Language
            Title 42 U.S.C.A. section 1983 provides in pertinent part: 
Every person who, under color of any statute, ordinance, regulation, custom, or
usage, of any State . . . subjects, or causes to be subjected, any citizen of the United
States or other person within the jurisdiction thereof to the deprivation of any rights,
privileges, or immunities secured by the Constitution and laws, shall be liable to the
party injured in an action at law. 

42 U.S.C.A. § 1983. A cause of action under this section involves two essential elements: (1) the
conduct complained of was committed by a person acting under color of state law, and (2) the
conduct deprived a person of rights, privileges, or immunities secured by the Constitution or the laws
of the United States. Parratt v. Taylor, 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420
(1981), overruled in part on other grounds, Daniels v. Williams, 474 U.S. 327, 331-32, 106 S.Ct.
662, 88 L.Ed.2d 662 (1986). Unlike a claim asserted pursuant to state law, consent to suit is not
required. See Nueces County v. Hoff, 105 S.W.3d 208, 210 (Tex.App.--Corpus Christi 2003, pet.
filed). 
“Persons”
            Municipalities and other local government units are “persons” within the meaning of section
1983 and may be liable for a constitutional tort suffered as the result of an official policy, custom
or pattern. See Monell v. Department of Social Services of City of New York, 436 U.S. 658, 690-91,
98 S.Ct. 2018, 2035-36, 56 L.Ed. 611 (1978). A municipality may be held liable for a single act or
decision of a municipal official with final policy making authority. Jett v. Dallas Independent
School Dist., 491 U.S. 701, 737, 109 S.Ct. 2702, 2724, 105 L.Ed.2d 598 (1989); City of St. Louis
v. Praprotnik, 485 U.S. 112, 123, 108 S.Ct. 915, 924, 99 L.Ed.2d 107 (1988)(plurality opinion);
Pembaur v. City of Cincinnati, 475 U.S. 469, 480, 106 S.Ct. 1292, 1298, 89 L.Ed.2d 452 (1986). 
But it cannot be held liable solely because it employs a tortfeasor--or, in other words, a municipality
cannot be held liable under section 1983 on a respondeat superior theory. Monell, at 691-92, 98
S.Ct. at 2036.
“Acting Under Color of State Law”
            We must first determine whether the alleged unconstitutional conduct is directly attributable
to HACEP through official action or imprimatur. In other words, liability arises if a deprivation of
constitutional rights was inflicted pursuant to acts which the municipality has officially sanctioned
or ordered. Pembaur, 475 U.S. at 480, 106 S.Ct. at 1298. This analysis requires a determination of
(1) a policy maker; (2) an official policy; and (3) a violation of constitutional rights whose moving
force was the policy or custom. These elements distinguish individual violations by employees from
those of the governmental entity. Piotrowski v. City of Houston, 237 F.3d 567, 578 (5th Cir. 2001). 
The line between official policy and independent action of employees is often elusive. McMillan
v. Johnson, 88 F.3d 1573, 1577 (11th Cir. 1996). 
A Policy Maker
            State law determines whether a particular official has final policy making authority. 
Praprotnik, 485 U.S. at 123, 108 S.Ct. at 924. We must look to state and local law, as well as
custom and usage having the force of law. Id. at 124 n.1, 108 S.Ct. at 924 n.1. Identifying final
policy makers may be a difficult task, but state law always should direct us “to some official or body
that has the responsibility for making law or setting policy in any given area of a local government’s
business.” Id. at 125, 108 S.Ct. at 925. We may not assume that final policy making authority lies
in some entity other than that in which state law places it. Id. at 126, 108 S.Ct. at 925. To the
contrary, we must respect state and local allocation of policy making authority. Id. at 131, 108 S.Ct.
at 928.
            Two more principles guide our inquiry. First, “the authority to make municipal policy is
necessarily the authority to make final policy.” Id. at 127, 108 S.Ct. at 926. Second, the alleged
policy maker must have final policy making authority with respect to the action alleged to have
caused the particular constitutional or statutory violation. Id. at 123, 108 S.Ct. at 924; Jett, 491 U.S.
at 737, 109 S.Ct. at 2724. An official or entity may be a final policy maker with respect to some
actions but not others. See Pembaur, 475 U.S. at 483 n.12, 106 S.Ct. at 1300 n.12. With respect to
a particular action, more than one official or body may be a final policy maker. In other words, final
policy making authority may be shared. Praprotnik, 485 U.S. at 126, 108 S.Ct. at 925. 
            Our search for those responsible for setting HACEP policy leads us the Local Government
Code. Section 392. 051 provides that “[t]he powers of an authority are vested in the commissioners
of the authority.” Tex.Loc.Gov’t Code Ann. § 392.051(b)(Vernon 1999). The authority may
delegate a power or duty to an agent or employee as it considers proper. Id. at § 392.051(c).
Therefore, the policy making authority of HACEP rests with its board of commissioners unless
otherwise delegated.
            Appellants’ complaints of HACEP’s actions can be traced to Lupe Armstrong, the Project 
manager. The petition alleged deliberate indifference by HACEP through its supervising personnel
and Armstrong by allowing a convicted child molester on the premises. The evidence reveals that
Armstrong had no authority as to whether potential tenants passed HACEP’s screening process. The
eligibility department determines whether a potential tenant is eligible for residency after conducting
a full background check, including an inquiry into criminal history. While Armstrong was
responsible for enforcing regulations, HACEP did not delegate policy making authority to apartment
managers to determine screening policy or applicant eligibility. The evidence was undisputed that
Martinez was denied residency in the project. Because Appellants failed to show that Armstrong,
her supervisors, or members of the eligibility department had final policy making authority, they
have failed to plead a jurisdictional requisite.
Designation of Official Policy
            Appellants must also identify an official policy. HACEP’s Admissions and Occupancy
Policy is entitled “Resident Screening and Verification.” It requires applicant screening, including
an investigation concerning “a history of criminal activity involving drug-related activity, a pattern
of alcohol abuse, crimes of physical violence to persons or property, or other criminal acts which
would adversely affect the health, safety or welfare of other residents.” Screening is required for
applicants and appropriate members of their household. HACEP may deny an application for
housing due to drug-related crimes or crimes against persons. Applicants are entitled to written
notice of their eligibility determination and staff members in housing management are primarily
responsible for implementing the policy. 
            A plaintiff may establish municipal liability under section 1983 by proving a violation of
constitutional rights by an action pursuant to official municipal policy or pursuant to misconduct so
pervasive among non-policy making employees of the municipality as to constitute a custom or
usage with the force of law. Monell, 436 U.S. at 691, 98 S.Ct. 2018. Official policy is (1) a policy
statement, ordinance, regulation, or decision that is officially adopted and promulgated by the law-making officers or by an official to whom the lawmakers have delegated policy-making authority;
or (2) a persistent, widespread practice of officials or employees, which, although not authorized by
officially adopted and promulgated policy, is so common and well settled as to constitute a custom
that fairly represents municipal policy. Webster v. City of Houston, 735 F.2d 838, 841 (5th Cir.
1984). Actual or constructive knowledge of such custom must be attributable to the governing body
of the municipality or to an official to whom that body had delegated policy making authority, and
actions of officers or employees do not create liability unless they execute official policy. Id. 
Official policy involves a deliberate choice to follow a course of action made from among various
alternatives by an official who is determined by state law to have the final authority to establish
governmental policy. Jane Doe A v. Special Sch. Dist. of St. Louis County, 901 F.2d 642, 645 (8th
Cir. 1990). Alternatively, “custom or usage” is demonstrated by (1) the existence of a continuing,
widespread, persistent pattern of unconstitutional misconduct by the governmental entity’s
employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental
entity’s policymaking officials after notice to the officials of that misconduct; and (3) the plaintiff’s
injury by acts pursuant to the governmental entity’s custom. Id. at 646. 
            The standard of deliberate indifference is high. Alton v. Texas A&M University, 168 F.3d
196, 201 (5th Cir. 1999), citing Doe v. Dallas Indep. Sch. Dist., 153 F.3d 211, 218 (5th Cir. 1998).
Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not
amount to deliberate indifference and do not divest officials of qualified immunity. Id. To
demonstrate deliberate indifference a plaintiff must show (1) a grave risk of harm, (2) the
defendant’s actual or constructive knowledge of that risk, and (3) his or her failure to take easily
available measures to address the risk. Camilo-Robles v. Hoyos, 151 F.3d 1, 7 (1st Cir. 1998), cert.
denied, Hoyos v. Camilo-Robles, 525 U.S. 1105, 119 S.Ct. 872, 142 L.Ed.2d 773 (1999), citing
Manarite v. City of Springfield, 957 F.2d 953, 956 (1st Cir.), cert. denied, 506 U.S. 837, 113 S.Ct.
113, 121 L.Ed.2d 70 (1992). 
            HACEP’s official applicant screening policy was effective--Martinez was rejected as a
tenant. At issue, then, is HACEP’s policy of screening non-tenant occupants and visitors, or lack
thereof. Appellants argue that the screening procedure was facially inadequate because it failed to
remove and exclude visitors that HACEP knew had criminal histories. By failing to supervise
convicted criminals, and by allowing those with criminal histories access to the property, HACEP
purportedly demonstrated deliberate indifference. In support of this argument, Appellants rely upon
Doe v. Hillsboro Independent School Dist., 81 F.3d 1395, 1403 (5th Cir. 1996), overruled by, 113
F.3d 1412, 1415-16 (5th Cir. 1997). Hillsboro involved complaints that the district’s inadequate
hiring procedures--failing to check criminal histories of prospective employees and failing to
supervise the custodial staff led them to hire criminals, one of whom raped the plaintiff. Id. at 1403. 
The court found that the allegations satisfied the inadequacy element because common sense
recommends, and state law demands, that school officials investigate the criminal histories of
prospective employees. The district’s total abdication of this responsibility constituted a facially
inadequate hiring process. Id. The court also decided that the hiring inadequacies revealed a
deliberate indifference to the plaintiff’s welfare because it constituted such recklessness or gross
negligence as to amount to conscious indifference to the plaintiff’s constitutional rights. 
            We first note that the court’s opinion in Hillsboro was later reversed. In Hillsboro II, the
court recognized that the plaintiff did not allege that the custodian acted under color of state law but
instead argued that the school breached a constitutional duty in failing to protect the plaintiff from
a sexual assault. 113 F.3d 1412, 1415-16. The court further recognized the general rule that
municipalities have no duty to protect citizens from private action. Id. at 1416. While
acknowledging the potential for section 1983 liability based on egregious hiring decisions, the court
refused to endorse the view that a school district has a duty to protect students from threats by third
parties. Id. Here, as in Hillsboro II, Appellants failed to allege that Martinez acted under color of
state law. Because they have not established a special relationship between HACEP and its tenants
imposing a duty to protect those tenants from criminal acts of third parties, Appellants failed to plead
a facially inadequate screening policy. Consequently, Appellants have failed to establish a
constitutional violation by a person acting under color of state law.
Violation of a Constitutional Right
            Even assuming that they have identified a person acting under color of state law, Appellants
also had to plead that one of their federally-protected rights, privileges, or immunities was
implicated. They pled that the children’s right to bodily integrity was violated. In support of their
argument, they direct us to three Fifth Circuit cases. 
            In Shillingford v. Holmes, 634 F.2d 263, 264 (5th Cir. 1981), overruled on other grounds,
Valencia v. Wiggins, 981 F.2d 1440 (5th Cir. 1993), a tourist was struck by a police officer with a
nightstick. The court found that the physical abuse was sufficiently severe and disproportionate to
the need presented and so deliberate and unjustified as to transcend the bounds of ordinary tort law
and constitute a deprivation of constitutional rights. Id. at 266. In Jefferson v. Ysleta Independent
School Dist., 817 F.2d 303, 305 (5th Cir. 1987), a school teacher tied a second-grade student to a
chair during two school days. The court determined that “[t]he right to be free of state-occasioned
damage to a person’s bodily integrity [wa]s protected by the fourteenth amendment guarantee of due
process.” Id., citing Shillingford v. Holmes, 634 F.2d 263, 265 (5th Cir. 1981). The court concluded
that “[a] young student who is not being properly punished or disciplined has a constitutional right
not to be lashed to a chair through the school day and denied, among other things, the basic liberty
of access to the bathroom when needed.” Id. And in Doe v. Taylor Independent School Dist., 15
F.3d 443, 446-49 (5th Cir.), cert. denied, Lankford v. Doe, 513 U.S. 815, 115 S.Ct. 70, 130 L.Ed.2d
25 (1994), a student was molested by a teacher. The court noted that “[i]f the Constitution protects
a schoolchild against being tied to a chair or against arbitrary paddlings, then surely the Constitution
protect[ed] a schoolchild from physical sexual abuse--here, sexually fondling a 15-year old school
girl and statutory rape--by a public schoolteacher. Id. at 451. The court found a clear deprivation
of a liberty interest recognized under the substantive due process component of the Fourteenth
Amendment and found it incontrovertible that bodily integrity was necessarily violated when a state
actor sexually abused a schoolchild because such misconduct deprived the child of rights vouchsafed
by the Fourteenth Amendment. Id. at 451-52. 
            Appellants have omitted any reference to DeShaney v. Winnebago County of Soc. Servs., 489
U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989) where the Supreme Court found “that a State’s
failure to protect an individual against private violence simply d[id] not constitute a violation of the
Due Process Clause.” Id. at 197, 109 S.Ct. at 1004. It carved exceptions for prisoners and mental
patients since the State had imposed limitations on their freedom and ability to care for themselves. 
Id. at 200-01, 109 S.Ct. at 1005-06. 
            This case does not involve state action akin to the officer-citizen assault in Shillingford, the
teacher-student lashing in Jefferson, or the teacher-student molestation in Doe. Appellants have
shown no special relationship akin to the DeShaney exceptions. We are concerned with molestation
by a private actor, not a state actor. Accordingly, Appellants’ pleading failed to show a violation of
a federally-protected right, privilege, or immunity.  
Armstrong as a Defendant
            Finally, Appellants complain that the trial court erred in granting Armstrong’s plea to the
jurisdiction because a supervisory official may be individually liable for her actions where deliberate
indifference is shown. But a suit against a public official in her “official capacity” is, in effect, a suit
against the municipality the official represents. Hallmark v. City of Fredericksburg, 94 S.W.3d 703,
708 (Tex.App.--San Antonio 2002, pet. denied), citing Hafer v. Melo, 502 U.S. 21, 25, 112 S.Ct.
358, 116 L.Ed.2d 301 (1991); Kentucky v. Graham, 473 U.S. 159, 165-66, 105 S.Ct. 3099, 87
L.Ed.2d 114 (1985); Esteves v. Brock, 106 F.3d 674, 677 (5th Cir. 1997). Appellants’ claim against
Armstrong in her official capacity is actually a claim against HACEP and is thus duplicative. 
Kentucky, 473 U.S. at 167 n.14, 105 S.Ct. 3099. And while they appear to argue that Armstrong was
also sued in her individual capacity, their petition does not support this contention. The actions
complained of involve Armstrong’s duties as Project manager for HACEP and her failure to enforce
screening procedures. We perceive no individual claim against Armstrong. For all of these reasons,
we overrule the sole point and affirm the judgment of the trial court below.


August 19, 2004                                                          
                                                                                    ANN CRAWFORD McCLURE, Justice

Before Panel No. 1
Larsen, McClure, and Chew, JJ.